LULA M. JONES, a widow, v. GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LTD., of Perth, Scotland.

159 So. 804.
Division A.
Opinion Filed March 6th, 1935.

*George C. Bedell* and *Chester Bedell,* for Petitioner;
*Lee Guest,* for Respondent.

WHITFIELD, C. J.—A prior judgment for the defendant insurer rendered by the Civil Court of Record of Duval County, which was affirmed on appeal by the Circuit Court, was quashed on certiorari because an affirmance of the judgment rendered upon a directed verdict for the defendant on the record as made, was not in accordance with the essential requirements of the law. Jones v. General Accident, etc., Assurance Corp., 103 Fla. 787, 137 So. 889. At a subsequent trial judgment was rendered for the defendant which was affirmed on appeal by the circuit court. This Court granted a writ of certiorari.

The policy insured against "the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means." The declaration alleges that on May 12, 1927, the insured "was struck by a moving automobile and in consequence thereof directly and exclusive of all other causes, sustained bodily injury from which such injury solely the death of the said Philip Jones resulted" on August 10, 1927.

There were pleas of "never promised as alleged"; denying that the death of the insured "resulted solely from a bodily injury"; denying "that the alleged bodily injuries were the sole cause of the alleged death of Philip Jones," and averring "that the alleged death * * * was caused, if at all, directly and entirely by disease"; denying "that the alleged bodily injuries were the sole cause of the death," and averring "that the alleged death, * * * if at all, was caused at least in part by disease"; denying that the insured "was

struck by a moving automobile at the time and place mentioned."

There was an amended ninth plea relating to indemnity for disability due to stated diseases referred to in Section (a) of Special Provisions of the policy which included tuberculosis; but this action is for death, not disability.

The testimony showed the insured was injured as alleged, and that he died within three months; that before the injury he was a healthy man and did not complain of any sickness or disease; that just after the injury he suffered from severe pains in the region of the kidneys; that there was a discharge of blood and pus from his kidney, for which he was treated till his death.

A physician testified:

"In tuberculosis of the kidney, the germ is carried to the kidney, and it begins insidiously, may cover a period of years. It may gradually get worse and worse, or it may remain comparatively stationary. That is, a person may have a tubercular kidney for years without being aware of any trouble there. Assuming a tubercular condition of the kidney in a man of the age and stature of Philip Jones, and a severe blow such as one might receive by being struck by a moving automobile and thrown to the brick pavement, that bruise or blow being in the kidney region that I found this bruise on Philip Jones' body; the natural and probable sequence of that blow as far as that tuberculosis kidney was concerned, might be to aggravate it. Tuberculosis of the kidney begins at a very small spot, and either scar tissue may form around this spot, or it may form caseous material, which is a sort of soft, broken down tissue of the kidney, if you wish, an abscess. This may go on and get larger and larger and ultimately destroy the kidney; or the fibrous tissue or scar tissue may become so great that it surrounds

the little diseased spot and eventually checks the activity of the germs there. This morbid condition may exist within the kidney, and the scar tissue or the fibrous tissue get hard enough so that it stops the activity of the diseased condition or the diseased tissue. When there is a blow to aggravate that condition, it may break down the resistance of the kidney by causing hemorrhage into it, or molecular destruction which is more or less of a contusion; or it may actually break down the wall of this protecting line of scar tissue. * * * When I made this examination of the urine of Philip Jones, I found albumin, pus, and blood. When I got this sample directly from the man's bladder and kidney, I found blood and pus in the urine. * * *

"When Philip Jones came into my office the first time, I made the physical examination of him at that time. I examined his body and took a blood specimen and a urine specimen. I had him take his shirt off and examined his body for bruises and things of that kind. I found evidence of a contusion of the back, the right back. A contusion is a bruise that doesn't tear the skin. It was a very tender back there and the skin was not exactly brush burned, which is just a brush of the skin, but without evidence—he didn't have any lacerated wound in his back, but there was evidence of a contusion. There was a bruise on his right back. * * * There was an existing disease condition in the kidney at the time of the accident. I don't know that the condition had become dormant, as I have suggested. He had tuberculosis germs in his urine at the time. * * * If there had been a diseased condition of the kidney, tuberculosis of the kidney and bladder, and this patient had received a severe blow, that blow could very easily have caused a hemorrhage of that diseased condition. He may have blood in his urine either way, but it is probable that it would. There is evi-

dence of a hemorrhage as there was blood in his urine. * * *
All I did was to accept the statement of the patient, and
evidence of a contusion, as we accept ordinarily, is evidence
of some sort of trauma or injury, external injury.  If this
man had not had tuberculosis of the kidney and bladder, that
particular blow causing that bruise would probably not have
been sufficient to have caused this man's death, exclusive
and independent of all other causes."

"Q. * * * Suppose Philip Jones had been an entirely
healthy man, had not had this tuberculosis of the kidney,
this diseased condition; would that blow received by Philip
Jones have caused his death?"

"A.   Well, I couldn't say for sure, but probably not."
Another physician testified:

"It is my opinion that this patient must have had this
disease for many months prior to the latter part of June,
1927.   There is no doubt that he had the disease on and
prior to May 12, 1927.   If a diseased kidney of that kind
is struck by an automobile, or a blow of some kind, there
would most likely be severe hemorrhage.   Tuberculosis of
the kidney is prone to hemorrhage anyway. * * *

"This tuberculosis infection of the kidney is often arrested
in its development, it may quiet down for a while.   Sup-
posing a tuberculosis condition of the kidney in a man about
forty-two or forty-three years of age, weighing about one
hundred and sixty-five to one hundred and seventy pounds,
who was an active man and apparently well; and supposing
that he receives a severe blow, struck by an automobile and
knocked down, and gets a bruise over his kidney, and that
is followed by hemorrhage, blood and pus from the kidney;
the natural and proximate effect of that blow on the tuber-
culous condition of the kidney would be to upset it, prob-
ably make it worse.   The natural and physiological opera-

tion of the blow making it worse would be hemorrhage from his urinary tract, and from his kidney; blood, that is. And if he had it within a few hours after receiving this blow, the kidney would have been torn or ruptured, bringing out that flow of blood or hemorrhage."

The policy insures against "the effects resulting directly and exclusively * * * from bodily injury sustained * * * solely through external violent and accidental means.

In order to adjudge liability of the insurer under the policy and the issues made by the pleadings in this case, the death of the insured must have resulted directly and exclusively from bodily injury, and such bodily injury must have been sustained solely through external, violent and accidental means. Bodily injury sustained solely through external, violent and accidental means is definitely shown. It must be shown that the death of the insured resulted directly and exclusively from the bodily injury.

It seems to be conceded that if the bodily injury to the insured had caused a disease to appear, the fact that the disease so caused contributed to the subsequent death of the insured would not prevent liability of the insurer, the disease being an effect of the bodily injury. Likewise the insurer should be liable if the bodily injury directly caused a dormant and inactive disease not then progressively tending to cause death, to become progressively active, whereby the death of the insured results even though without the dormant inactive disease, the bodily injury would not have caused the death of the insured. In such case the bodily injury would be the direct cause of the renewed activity of the dormant disease whereby death results directly and exclusively from the bodily injury. See Freeman v. Mercantile Accident Assoc. 156 Mass. 351; Bohaker v. Travelers' Ins. Co., 215 Mass 32; Continental Casualty Co. v.

Lloyd, 165 Ind. 52; Fetter v. Fidelity Casualty Co., 174 Mo. 256; Fidelity & Casualty Co. of New York v. Mitchell, L. R. App. Cas. 1917 p. 592; Western Commercial Travelers' Ass'n v. Smith, 85 Fed. 401.

It might be said that the aggravation of an existing active disease may be an effect of or a direct result of a bodily injury; and that the insurer should be liable where death or disability of the insured results. But when an active progressive disease which tends to result in death or disability existed at the time of the injury and consequently *was not caused by the injury,* and the injury merely causes an aggravation of the existing active progressive disease, whereby death or disability results, there may be no liability of the insurer under some policies, at least where there is a provision in the policy which in effect excluded liability when the death or disability is caused directly or indirectly in whole or in part by disease.

A bodily injury may be the direct and exclusive cause of death within the meaning of the policy of insurance in this case when such bodily injury directly and exclusively makes active and progressive a then existing dormant, inactive, diseased condition of the insured, whereby death results; and in such case there may be liability of the insured under the policy even though the bodily injury would not have resulted in the death of the insured, had he not had the dormant inactive diseased condition of his person. This is so for the reason that the dormant and inactive disease may be a mere condition not actively tending to cause death, and if such dormant disease is directly and exclusively made active or progressive by the bodily injury, such bodily injury acting directly and violently upon the dormant, inactive disease, would be the direct and exclusive cause of the death within the meaning of the policy which is issued

to insure against the effects of accidents; and such policies should be made effective as designed when issued. See Kansas v. New York Life Ins. Co., 193 N. W. 867; Fidelity & Casualty Co. v. Meyer, 44 L. R. A. (N. S.) 493; Moon v. Order of Commercial Travelers, 52 L. R. A. (N. S.) 1203; Equitable Life Assur. Soc. v. Gratiot, 82 A. L. R. 1397.

Differing from many others, the policy in this case does not expressly exclude liability when disability or death of the insured is caused directly or indirectly in whole or in part by any form or condition of disease. See Benefit Ass'n Ry. Employees v. Armbruster, 217 Ala. 282, 116 So. 164, 140 So. 356; Nat. Masonic Acc. Ass'n. v. Shryock, 73 Fed. 774; Illinois Commercial Man's Ass'n v. Parks, 179 Fed. 794.

If at the time the external, violent and accidental bodily injury was sustained by the insured, the insured was not suffering from the effects of active, progressing tuberculosis, but the tubercular condition of his kidney and bladder was dormant and inactive, and not then actively tending to cause death, and the bodily injury directly and exclusively caused the dormant tuberculosis to become active and progressive, whereby death resulted, the bodily injury which directly and exclusively caused the dormant tuberculosis to become active and progressive would be the direct and exclusive cause of the death within the meaning of the policy here involved.

The court charged the jury as to the legal effect of the bodily injury when it caused a diseased condition or when it merely aggravates an existing disease; but upon the case as made it was proper for the court to give appropriate charges as to the legal effect under the policy, if the disease was dormant and inactive, and the injury directly and

exclusively caused the dormant and inactive disease to become active and progressive, whereby death resulted.

Plaintiff requested the following charge:

"If you find from the evidence that the death resulted directly and exclusively of all other causes from bodily injuries sustained solely through external, violent and accidental means, as alleged in the declaration, then you will find for the plaintiff, and this notwithstanding it may appear from the evidence in the case that upon subsequent investigation a tubercular condition of the kidney was discovered, and that that tubercular condition may have existed prior to and at the time the accidental injury happened; provided further, that you find that the assured would not have had the active moving disorder producing death at the time and in the manner he did have it, if he had not been injured by the external, violent and accidental means set up in the declaration."

Such requested charge may not strictly accord with the principles herein stated as being applicable to this case; but no other similar charge was given, and its refusal was a departure from the essential requirements of the law, since it left uncovered by charges a material element of the case made by the pleadings and the evidence under the policy sued on. In view of the state of the evidence, the plaintiff had a right at least upon request to have the jury in forming a verdict, to consider and determine under proper charges, whether the evidence showed the tuberculosis of the kidney was active and progressive or was dormant and inactive not tending to cause death, when the bodily injury of the insured was sustained. Some of the charges given do not accord with the views herein expressed.

The death certificate stating that the death of the insured was caused by tuberculosis of the left kidney and of the

bladder, has admissible *prima facie* evidentiary value; but the record indicates that the certificate was made without reference to the bodily injury in the region of the kidneys shown to have been sustained by the insured and the then discovery of and treatment for a tubercular condition of the kidneys and bladder of the insured.

In another trial the principles of law stated herein may be applied in appropriate charges as the evidence may warrant.

The judgment of the Civil Court of Record affirmed by the Circuit Court is quashed.

BROWN, and DAVIS, J. J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.