## BACHMAN v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

### No. 30.

District Court, N. D. Florida.

April 19, 1943.

P. B. Huff, and Hilburn & Merryday, all of Palatka, Fla., for plaintiff.

Samuel W. Getzen and Ira J. Carter, Jr., both of Gainesville, Fla., for defendant.

LONG, District Judge.

This is an action by the widow on a certicate or policy issued by United Commercial Travelers, a fraternal organization, whereby the insurer promises to pay to the beneficiary a stated sum for the loss of life of Edward A. Bachman resulting from a personal injury due to accidental means alone and independent of all other causes.

No demand was made under the rules for a jury and the case was presented to the Court upon stipulation of counsel agreeing to the facts and consenting that a photostatic copy of the hospital records and all matters pertaining thereto, entry, sickness and death of the said Bachman in the United States Veterans Hospital in Lake City, Florida, should be received, admitted and considered as evidence in this case, as well as a copy of the evidence produced before George B. Carter, deputy commissioner of Workman's Compensation Division, Florida Industrial Commission, in the cause in which the widow, Amelia E. Bachman, plaintiff herein, was claimant and Cumberlin & Liberty Mills Company was employer.

The issues in this cause as presented by the pleadings are:

1. Whether the death of the insured member was caused through external, violent and accidental means which was occasioned by said accident alone and independent of all other causes.

2. Whether the plaintiff authorized and permitted an autopsy to be performed without first giving notice thereof to the defendant.

3. Whether the death benefit payable to the widow (beneficiary) under a bona fide death claim was by amendment to the constitution reduced from $6,300 to $5,000.

The first and paramount issue to be determined under the contract is the cause of death. The contract consists of the policy, constitution and by-laws of this fraternal organization. The policy provides that the company is liable for the death of the member due to accidental means alone and independent of all other causes. It makes the certificate, the constitution, by-laws and articles of incorporation, together with the application for insurance, the contract between said Order and insured member, and provides that any changes, additions or amendments to said constitution, by-laws or articles of incorporation subsequently made, binds said order, the insured member and his beneficiary and governs and controls the contract in all respects.

It appears that subsequent to the issuance of this certificate of insurance the constitution was amended in that the word "solely" is inserted in the contract of insurance instead of the word "alone", so that the contract would now read "death due to accidental means solely and independent of all other causes".

The constitution in effect at the time the certificate was issued and at the time of the death of the insured, among other things, provided that "nor shall the Order be liable to any person for any benefits for death * * * by reason of any of the

following conditions, whether caused by accidental means or not, to-wit: any infection (unless the infection is introduced into, by or through an open wound, which open wound must be caused by external, violent and accidental means and be visable to the unaided eye)".

It is agreed under the stipulation or statement of facts that the plaintiff was the lawful wife of the insured member and is the beneficiary; that the defendant is a fraternal benefit society under the laws of Ohio and licensed to do business in Florida; that Edward A. Bachman was issued the certificate of insurance, which is the basis for this action, and that said certificate was in full force and effect at the time of his death; that a certified copy of the constitution and by-laws attached was in effect on January 1, 1942, and on February 19, 1942; that the beneficiary had complied with the contract in furnishing notices of death; that in June 1933 at the annual meeting of the Supreme Council of the defendant an amendment reducing the death benefit from $6,300 to $5,000, as reflected in the constitution and by-laws, effective July 1, 1933, was adopted; that the allegations of the answer and the amendments thereto as to reserve fund and disbursement, transfer of funds from the general expense fund to the reserve fund, and the action taken by the Supreme Council and the consequent adoption of the amendment to the constitution reducing the benefit from $6,300 to $5,000, and that no formal proof thereof need be made; that the insured, Bachman, died on the 19th day of February 1942 at the Veteran's Hospital in Lake City, Florida, and that on the same day an autopsy was performed on his body without previous notice thereof having been given to the defendant.

■ The plaintiff is not entitled to recover unless the death of the insured resulted from a personal bodily injury which was effected solely and independently of all other causes by the happening of an external and purely accidental event, and the burden is on the plaintiff to prove that the death was so effected or caused. The evidence discloses that the insured Bachman was in good health except for high blood pressure; that he lived in Palatka, Florida, and was employed by Cumberlin & Liberty Mills Company and that he traveled a territory selling the products of this company; that on New Year's Eve night he attended a dance in company with his wife, return-ing home some time after midnight; that he immediately left his home in his car for Leesburg, Florida, where he was to see some customers; that at a point somewhere near the city of Ocala, Florida, the car ran into a telephone pole, bounded some distance into the woods and came to rest; that the insured got out of his car and when asked if he was hurt answered that he did not think so; that a mechanic was called, his car repaired in a short while and he went on his way, stopping in the cafe in Ocala for breakfast and thence to Leesburg, where he spent the day, returning to Ocala the same evening and spent the night, in a hotel there; that the next day he continued his work and returned to his home in Palatka for the weekend; that when he reached home he told his wife of the accident and stated that he went to the hotel in Ocala shortly after the accident and lay down and rested for a short period of time before proceeding to Leesburg, complaining to the Clerk that he was feeling bad, which statement is corroborated by the hotel Clerk; that on the night of January 1, after his return from Leesburg and while at the hotel in Ocala, he had a hemorrhage of the bowels, how severe this hemorrhage was is not disclosed; certain it is that it was not so extensive as to prevent his continued working until the 17th day of January, at no time did he feel it necessary to consult a physician; that on the 17th of January while at home in Palatka he was taken critically ill, high fever and hemorrhage from the bowels; that Dr. Johnson the family physician was called, who made a tentative diagnosis of typhoid fever and a positive diagnosis about a week later. The doctor testified that it was an infectious type of typhoid fever contracted through the mouth. When asked if an injury sustained prior to the attack of fever would render him less able to overthrow the germs the doctor replied, "that is a big question". But, he did state that the cause of death was typhoid fever. He further stated that if trauma had any bearing on the death the autopsy should have disclosed some sign or signs of an accident; that there was a rigid condition in the abdomen on January 17, but there was no discoloration of the abdomen in the region of this rigid condition. Dr. Johnson's diagnosis as typhoid fever was corroborated by Dr. Zeagler, by the physician at the Veteran's Hospital in Lake City and by the Pathologist, Dr. Dyrenforth, who

states positively that there is no causal connection whatever between the accident on January 1 and the cause of death. This pathologist testified quite extensively, which testimony corroborates the report of the Veteran's Hospital as to the cause of death. The pathologist testified that he examined the organs of the abdomen necessary to be examined; that there was no trauma and that there was no superficial evidence of any injury. Dr. Johnson's opinion is that the injury would have to be of such a nature as to cause damage to the internal organs. The only witness whose evidence tends to support plaintiff's claim is the physician, Zeagler, who testified that his diagnosis was typhoid fever, and that trauma could be a contributing cause only, and then only in case where the typhoid could have caused death by gaining entrance through traumatic injury to his intestines. This physician may be correct in that statement, but there is no evidence in this record of any traumatic injury to the intestines or any other organ of injured's body, other than a bruise on the hand or arm. The doctor does state that if there was a traumatic injury to the intestines that it might be a contributing factor, if the injury would permit the entry of infectious germs into the intestinal track.

In the Florida case of Jones v. General Accident Fire & Life Assurance Corporation, 118 Fla. 648, 159 So. 804, in which the plaintiff died of tuberculosis of the left kidney after an accident; that he was afflicted with tuberculosis of this organ for some time prior to the accident; that just after the injury he suffered from severe pains in the region of the kidneys and there was a discharge of blood and pus from his kidneys for which he was treated until his death. In this case the Supreme Court of Florida held that: an Insurer is liable where bodily injury directly caused a dormant disease not then progressively tending to cause death to become progressively active, although the injury would not have caused death had he not had the dormant disease. If bodily injury directly and exclusively caused the dormant disease of tuberculosis to become active and progressive, then the insurance company is liable.

In the case at Bar the testimony is not convincing that insured ever suffered from the disease of typhoid fever prior to the accident, or that the injury was sufficiently severe to cause the disease to become active if dormant.

For this Court to say from the evidence before it that Bachman had a dormant disease, to-wit: typhoid fever, and that the alleged injury caused this dormant disease to become progressively active, would be a mere guess or surmise, and not a finding based on evidence. The case of Ryan v. Continental Casualty Company, 5 Cir., 47 F.2d 472, is very much in line with the case at Bar.

■ In this instance this Court is sitting as a jury and must weigh the evidence and determine the facts from a preponderance of the evidence. Preponderance of the evidence signifies that which satisfies the conscience and brings conviction to an intelligent mind. From a consideration of all of the evidence in this case it appears that the evidence does not preponderate in the plaintiff's favor, but on the other hand is convincing that there is no causal connection whatever between the accident of January 1, 1942, and the death of the insured on February 19, 1942.

As to the second issue, the constitution in effect at the time the certificate was issued provided "any claim for death alleged to have been caused by accident shall be forfeited and rendered null and void should an autopsy not requested by the Supreme Executive Committee, or any representative authorized by it, be held without notice thereof being first given to the Supreme Secretary at least seven days in advance of the intended autopsy." This provision was not complied with.

The constitution in effect at the time of Bachman's death is the same with the exception that by amendment the seven day period was reduced to seventy-two hours, so that at the time of death the contract provided that notice of an intended autopsy should be given at least seventy-two hours in advance thereof to the defendant. The undisputed testimony in this case as shown by the record is that the insured died on February 19, 1942, at 12:20 p. m.; that an autopsy was performed on the same day commencing at 2:00 p. m., and completed at 4:00 p. m.; that Mrs. Bachman three days before her husband's death had verbally requested the United States Veteran's Hospital to perform an autopsy on the body of her husband in case of his death in order that the cause of his death might be determined. "She was interested in having

this done in order to determine if any injury had been responsible for his critical condition". It was explained to her that typhoid fever was not likely to result from an injury, but she stated that since he had had an automobile wreck January 1, 1942, an injury might have accounted for his being so sick. The memorandum relative to this oral request for autopsy is signed by Dr. Greenburg, one of the registered nurses, the head nurse and an attendant. It is admitted in the agreed statement of facts that the facts and circumstances relating to said autopsy and the action taken with reference thereto by plaintiff and defendant are set forth and shown by the record of said hospital and the correspondence between the plaintiff and defendant and those acting under their authority. That at 3:45 p. m., on the day of her husband's death, the plaintiff wired the Veteran's Hospital as follows: "Please turn remains of Edward Alvin Bachman over to W. Carl Davis and Son Do not perform autopsy." Signed, Mrs. E. A. Bachman. This message was received at the hospital at 4:30 p. m., after the autopsy had been completed (Exhibit G, Hospital Record). Subsequent to the performing of the autopsy and on February 20, a form was sent to this plaintiff in which she consents to the autopsy in writing, which form was properly signed, dated February 19, 1942, and enclosed in a letter to the hospital bearing date February 25, 1942.

"It is incumbent on persons interested in an insurance policy to see that a requirement thereof, that the insurer be given an opportunity to be present at an autopsy on the body of insured, is met. Thus, a provision of an accident policy that the insurer shall have the right and opportunity to be present at an autopsy on the body of the insured implies a right to seasonable notice that an autopsy is to be performed." 29 Am.Jur. sec. 1131, p. 848.

It, therefore, appears from the evidence that this plaintiff requested the autopsy in order that the cause of death might be ascertained, and that subsequent to the autopsy she ratified and confirmed this request in writing. Compliance with a condition giving the insurer the right and opportunity to be present at an autopsy is a condition precedent to the right of a beneficiary to recover.

The Court being of the opinion that defendant is not liable, it is unnecessary to consider the question of defendant's right to reduce the death benefit.

A judgment will be entered for the defendant.

This case being one tried before the Court upon the facts without a jury, and the Court having in the foregoing opinion specially stated the facts, as well as its conclusions of law thereon, this opinion is filed in lieu of formal findings of fact and conclusions of law, as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.