**Mary Ann McILRAITH, Plaintiff,**

**v.**

**GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY, Defendant.**

**No. 00–2909–CIV.**

United States District Court, S.D. Florida.

Jan. 31, 2001.

Gregg Silverstein, Silverstein, Silverstein & Silverstein, P.A., Aventura, FL, Patrice Talisman, Hersch & Talisman, P.A., Miami, FL, for plaintiff.

Frank Burt, Stephan I. Voudris, Jorden Burt, LLP, Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant General Electric Capital Assurance Company's ("General Electric") motion to dismiss the complaint. By Order dated October 25, 2000, the Court converted General Electric's motion to one for summary judgment, pursuant to Fed. R.Civ.P. 12(b), because General Electric had submitted matters outside the pleadings in support of the motion. To insure compliance with Fed.R.Civ.P. 56, the Court granted General Electric additional time to supplement its motion with appropriate evidentiary materials and a concise statement of undisputed facts.

After General Electric filed its supplemental submission, Plaintiff Mary Ann McIlraith moved for leave to amend the complaint. By Order dated November 16, 2000, the Court granted the motion, with the provision that, should General Electric so choose, it had leave to incorporate by reference into its response to the amended complaint any pertinent portions of its motion to dismiss the original complaint, as supplemented pursuant to the Court's order converting said motion to one for summary judgment.

Thereafter, General Electric answered the amended complaint, and McIlraith filed her response in opposition to the pending motion for summary judgment, within the context of the amended complaint. General Electric has now filed its reply memorandum, thereby completing the briefing of the motion.

### DISCUSSION

In her original complaint, McIlraith averred that she is the named beneficiary of an accidental death and dismemberment insurance policy issued by General Electric to her deceased husband, John P. McIlraith. The complaint sought payment of benefits under the policy based on the following assertions:

Between August 28, 1998 and September 11, 1998, John P. McIlraith was a patient at Miami Heart Institute and Medical Center and became a victim of medical malpractice which resulted in his death.

As a direct and proximate result of the death of John P. McIlraith as a result of the aforementioned medical malpractice, Plaintiff, Mary Ann McIlraith, has become entitled to benefits under said policy.

*See* Complaint, at ¶ 4–5.[1]

In support of its motion to dismiss, General Electric argued that the alleged malpractice was not covered by the policy at issue. General Electric relied on the poli-

---

1. A separate medical malpractice action against Mr. McIlraith's health care providers is currently pending in state court.

cy language which defines a covered "injury" as follows:

> "Injury" means bodily injury of an Insured Person which: (1) is caused by an accident that occurs while the Policy is in force as to the Insured Person; (2) results directly in loss insured by the Policy; (3) creates a loss due, directly and independently of all other causes, to such accidental injury; and (4) occurs in the manner and under the circumstances described in the Description of Hazards which apply.

*See* Exhibit 1 to Motion to Dismiss, at 3. General Electric also submitted a copy of Mr. McIlraith's death certificate, showing the causes of death as "massive subarachnoid hemorrhage" and "ruptured intracerebral right vertebral artery aneurysm". According to General Electric, the purported malpractice could not have directly and independently caused Mr. McIlraith's death, given his brain aneurysm.[2]

In an apparent attempt to cure this problem, the plaintiff's amended complaint contains the following assertions:

> In early August, 1998, John P. McIlraith was involved in a motor vehicle accident. Thereafter, he was a patient at Miami Heart Institute and Medical Center between August 28, 1998 and September 11, 1998 and became a victim of medical malpractice. Injuries caused by the motor vehicle accident and malpractice resulted in John P. McIlraith's death.
>
> As a direct and proximate result of the death of John P. McIlraith as a result of the aforementioned accident and medical malpractice, Plaintiff, Mary Ann McIlraith, has become entitled to benefits under said policy.

*See* Amended Complaint, at ¶ 4–5.

In support of these allegations and in opposition to General Electric's motion for summary judgment, Mrs. McIlraith has submitted an excerpt from her deposition in the state medical malpractice case. According to that deposition testimony, in early August, 1998, prior to his hospitalization, Mr. McIlraith was involved in an automobile accident. Mrs. McIlraith's learned of the accident solely from her husband's story, told to her on the following day, to the effect that it occurred on his way back from a business meeting in the Florida Keys, when his car spun after applying the brakes and hit a guard rail. The plaintiff has also submitted an affidavit from Dr. Kenneth Fischer, a neurologist who opined that the early-August front-end collision would have caused Mr. McIlraith's head to be whipped back and forth, and that this trauma, more like than not, caused aneurysm in the back of his head to leak. According to Dr. Fischer, the aneurysm was "latent and inactive" prior to the accident. Dr. Fischer then concludes that, "As a direct result of the motor vehicle accident, the aneurysm leaked and worsened. The health care providers failed to properly care for and treat this condition. Mr. McIlraith died as a result of these two accidents which caused the aneurysm to worsen."[3]

The plaintiff posits that these submissions are sufficient to raise a factual question of "whether the accidents sustained by Mr. McIlraith were the direct and inde-

---

**2.** According to the complaint in the malpractice action, doctors misdiagnosed the patient's brain condition as alcohol withdrawal when the latter presented with headaches and unusual behavior. At the time, the patient was hospitalized for concurrent abdominal problems, which resulted in an appendectomy.

**3.** Although Dr. Fischer's affidavit refers to his having reviewed an "Allstate Insurance Co. estimate", presumably one prepared in connection with the accident, plaintiff did not submit a copy of that estimate nor any other independent evidence of the occurrence of the automobile accident.

pendent cause of his death" and that such question prevents granting General Electric's motion for summary judgment. For purposes of the motion, the Court will assume that the plaintiff could prove the occurrence of the automobile accident by independent evidence (rather than relying on hearsay from her now deceased husband). The Court will also accept plaintiff's characterization of the alleged medical malpractice as an "accident" even though a misdiagnosis of Mr. McIlraith's brain condition does not fall within the ambit of cases cited by the plaintiff for the proposition that miscues, mishaps or misadventures in medical procedure are accidents.

Even with the benefit of these assumptions, plaintiff's efforts to overcome judgment as a matter of law must fail. According to Dr. Fischer's opinion, Mr. McIlraith's aneurysm was dormant prior to the automobile accident, at which time it leaked; i.e., became active. Were Mrs. McIlraith to argue that the automobile accident caused her husband's death, the principles articulated in *Jones v. General Accident, Fire & Life Assurance Co.*, 118 Fla. 648, 159 So. 804 (1935), upon which she relies, might be applicable to this case. As stated by the Florida Supreme Court in *Jones*, a bodily injury that makes active and progressive a then existing dormant, inactive diseased condition of the insured, whereby death result, may be the direct and exclusive cause of death. However, assigning causation solely to the automobile accident would contradict the averments contained in the medical malpractice complaint and in the original and amended complaints in this case. By relying on a subsequent event (medical malpractice), as another cause of death, the plaintiff preempts the possibility that either one created a loss that is due, directly and independently of all other causes, to such event. Moreover, if the aneurysm became active by operation of the automobile acci-

dent, then the principles of *Jones* cannot apply to the malpractice "accident". In an apparent effort to bypass this analysis and satisfy the policy language, the plaintiff melds the two alleged causes of her husband's death into one "direct and independent" cause. This characterization is both temporally and logically flawed. Indeed, it is nothing more than a play on words.

### CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Defendant General Electric Capital Assurance Company's motion to dismiss the complaint converted to one for summary judgment with respect to the amended complaint, is GRANTED. Pursuant to Fed.R.Civ.P. 58, the Court is contemporaneously entering summary final judgment by separate order.