566

**DULANSKY et al. v. IOWA–ILLINOIS GAS & ELECTRIC CO.**

Civ. A. No. 1–15.

United States District Court
S. D. Iowa, Davenport Division.

Oct. 26, 1950.

See also 92 F.Supp. 118.

Newport, Bybee , & Wine, Davenport, Iowa (Walter A. Newport, Jr., Davenport, Iowa, appearing), for plaintiffs.

Larned Waterman, of Lane & Waterman, Davenport, Iowa, for defendant.

SWITZER, District Judge.

### I. Statement of the Case

This is an action for damages for claimed wrongful death of a minor child alleged to have been caused by the negligence of the defendant's bus operator.

### II. Summary of the Record

The action was instituted in State Court and was thereafter duly removed to Federal Court. Paragraph 5 of plaintiffs' petition predicates the cause of action upon the alleged negligence of defendant's bus operator in colliding with and striking plaintiffs' decedent, knocking him and his bicycle to the pavement and inflicting injuries from which he died. Paragraph 6 of plaintiffs' petition sets forth the following specifications of negligence alleged to be the proximate cause of the death of the decedent:

"a. In operating his bus in a reckless and careless manner in a residential area where one would reasonably anticipate the presence of minor children.

"b. In failing to keep a proper lookout and to observe Plaintiff's decedent in time to avoid striking him.

"c. In failing to give any audible warning signal by bell or horn that Defendants' bus was approaching Plaintiff's decedent from the rear.

"d. In failing to take due precautions for the protection of Plaintiff's decedent after he knew or should have known of the presence of said child on said street, and after he recognized, or should have recognized, the youth and lack of experience of said Plaintiff's decedent.

"e. In not having his bus under control as he approached said minor child, and in not having said bus under control when passing said child and causing the bicycle upon which the child was riding to be thrown to the street, resulting in the death of said child.

"f. In operating the bus at an excessive rate of speed, and failing to reduce his speed after seeing the Plaintiff's decedent riding his bicycle in the street and in passing or attempting to pass said decedent.

"g. In not operating his bus in such a manner and at such speed as to be able to stop it within the assured clear distance ahead.

"h. In failing to stop said bus as soon as by exercise of reasonable care it should have been stopped after said operator saw or should have seen the danger that his bus might cause injury to said minor child." Subparagraph b of Paragraph 6 of plaintiffs' petition was withdrawn by stipulation of the parties dated April 5, 1950 and filed in this record April 6, 1950.

Rule 16 was invoked by the Court and Rules 33, 34 and 36, Fed.Rules Civ.Proc. 28 U.S.C.A., were subsequently employed by both parties. During a pre-trial conference held at Des Moines, Iowa, in May of 1950, the plaintiffs submitted two photographs of tire marks made by the defendant's bus at the scene of the accident, and identification of the tire marks was waived by the defendant. At this time, a leather helmet worn by the decedent at the time of the accident was produced for inspection under Rule 34. During this pre-trial conference, it was agreed by counsel and ruled by the Court that the testimony of witnesses contained in the record of a certain coroner's inquest held on December 6, 1948 at the City Hall in Davenport, Iowa, which proceedings inquired into the death of the decedent, would constitute proper affidavits by the several witnesses which could be utilized for the purposes of summary judgment. The record of this coroner's inquest, consisting of an executed copy of the transcript of the proceedings, was filed by the defendant at pre-trial conference and received by the Court, and that record is hereinafter referred to as the "Transcript".

The defendant's motion for summary judgment came on for hearing before this Court on September 28, 1950. In support of its motion, the defendant incorporated by reference the Transcript and an affidavit of Robert L. Phifer, M.D. dated April 6, 1950, which affidavit had been filed in this cause in support of a prior motion. The defendant also submitted additional affidavits by Robert L. Phifer, M.D., Leonard W. Hughes, and Edward Peters. In resistance to the motion for summary judgment, the plaintiffs submitted the affidavits of Donald Wikert, Bonnie Dulansky, Walter A. Newport, Jr., M. W. Van Allen, M.D., and Olan R. Hyndman, M.D. After the motion had been heard and argued, defendant tendered an affidavit by Frederick H. Lamb, M.D., and the plaintiffs tendered an unsigned statement purportedly made by Andrew Neilson together with an affidavit by Walter A. Newport, Jr.

The Court, having examined the evidence before it, including the pleadings, interrogatories, admissions, affidavits and Transcript now on file, as well as the identified photographs and helmet and having interrogated counsel as to the existence of any disputed facts, and having received and duly considered written briefs of counsel for both parties, now makes the following findings of material and uncontroverted facts and conclusions of law:

## III. Findings of Fact

On December 1, 1948, at about 4:42 P. M., the defendant's bus No. 367, operating on a regularly scheduled run, departed from the intersection of Belle Avenue and East Elm Street in the City of Davenport, Iowa, and began traveling west on Elm Street (Hughes affidavit p. 1; Transcript pp. 54, 55).

Bus No. 367 was 26 feet 5 inches in length. It was equipped with airbrakes operating equally on four brake drums on the front and rear wheels of the bus, which brakes were applied by means of a foot pedal (Plaintiffs' Interrogatories 1, 2 served November 15, 1949 and defendant's responses served November 30, 1949). The width of the bus was approximately 7 feet 10 inches. The distance from the front bumper to the center of the front wheels was about 5 feet 8½ inches (Plaintiffs' second interrogatories 6, 7 served April 21, 1950 and defendant's responses served August 4, 1950). The front wheels of the bus were single and the rear wheels were dual (Plaintiffs' second requested admissions 20, 21 served April 21, 1950 and defendant's admissions served August 4, 1950). The speedometer on the bus was not in working order on December 1, 1948 (Plaintiffs' second interrogatory 14 served April 21, 1950 and defendant's response served August 4, 1950). The bus was equipped with a governor set for a top speed of 35 miles per hour (Hughes affidavit p. 6).

The defendant's bus had been painted on November 24, 1948. At the time of the accident on December 1, 1948, there were no scratches on either the front or right side of the bus (Plaintiffs' second interrogatories 1, 2, 4 served April 21, 1950 and defendant's responses served August 4, 1950). The entire bus was painted on November 24, 1948, and the trip on December 1, 1948 was the first trip since the bus had been returned to service (Peters affidavit p. 1). About two weeks' time is required for paint to harden, and if a newly-painted bus is washed within that period, brush marks are inflicted on the yellow and red paint. It does not require much force to scuff or scratch the yellow or red paint which on a new job can be scuffed or dulled simply by striking it with the palm of the hand (Peters affidavit p. 2).

The bus was on schedule when it left the intersection heretofore referred to; it was daylight and light outdoors, visibility was clear, and the pavement was dry (Hughes affidavit p. 1; Transcript p. 55; Plaintiffs' requested admissions 2, 4 served March 14, 1950 and defendant's admissions served March 23, 1950). The bus carried, in addition to its driver, Leonard W. Hughes, a passenger by the name of Andrew W. Neilson, who frequently used the bus service and who on this occasion was seated immediately behind the driver on the left side of the bus (Hughes affidavit p. 1; Transcript pp. 4, 8, 20).

Several blocks west of Belle Avenue, Elm Street spans a set of railroad tracks by means of a bridge or viaduct about 200 feet in length. The roadway over this bridge is about 22 feet in width, but on either side of the bridge Elm Street is about 30 feet in width and is paved with asphalt (Hughes affidavit pp. 1, 2).

Gary Dulansky, the 10-year old decedent, had ridden bicycles of his friends for more than a year prior to the accident and had received a bicycle from his parents on November 24, 1948. His father knew he was operating his bicycle on the streets of Davenport in the daytime in the vicinity where the accident occurred (Defendant's Interrogatories 3, 4 served March 15, 1950 and plaintiffs' responses served April 3, 1950).

Prior to the accident, the decedent rode his bicycle west on Elm Street across the bridge heretofore mentioned ahead of the bus (Hughes affidavit p. 2; Transcript p. 55). The decedent was aware of the approaching bus as he crossed the bridge (Hughes affidavit p. 2; Transcript p. 61).

After the bus had traversed the bridge behind the bicyclist, the bus driver turned the bus into the south half of Elm Street and accelerated its speed preparatory to passing the decedent (Hughes affidavit p. 3; defendant's requested admission 15 served March 29, 1950 and plaintiffs' amended and substituted response served July 20, 1950). There were no vehicles or obstructions at or near the north curb of Elm Street in the vicinity of the place of the accident at or immediately prior to the accident (Defendant's Interrogatories 15, 16 served March 15, 1950 and plaintiffs' responses thereto served March 18, 1950; Transcript p. 6).

When the bus reached a point between 75 and 100 feet west of the bridge, where the accident occurred, the bus was traveling west in the south half of Elm Street (Hughes affidavit p. 3). The bus was then traveling at a medium speed estimated at 18 miles per hour (Hughes affidavit p. 3; Transcript p. 8; plaintiffs' second requested admission 10 served April 21, 1950 and defendant's admission served August 4, 1950). The decedent was then traveling west parallel to and about 2 or 2½ feet from the north curb of the street (Hughes affidavit p. 3; Transcript p. 60). At this time, the front end of the bus had reached a point about even with the rear of the bicycle (Hughes affidavit p. 3; defendant's requested admission 20 served March 29, 1950 and plaintiffs' amended and substituted admission served July 20, 1950).

The decedent was traveling west along the north side of the street (Transcript pp. 7, 15). He was aware of the overtaking bus as it began to pass him (Hughes affidavit pp. 2, 3; Transcript p. 61). The bus operator did not sound a horn signal (Plaintiffs' second interrogatory 17 served April 21, 1950 and defendant's response served August 4, 1950; Transcript p. 61). As the front of the bus drew up to a point opposite the rear of the bicycle, the front bicycle wheel tipped sharply toward the bus and the decedent began heading southwesterly toward the bus (Hughes affidavit p. 3; Transcript pp. 6, 55; defendant's requested admission 20 served March 29, 1950 and plaintiffs' amended and substituted admission served July 20, 1950). At this time, the bus driver swung the bus hard to the left and then to the right, meanwhile applying airbrakes (Hughes affidavit p. 3; Transcript pp. 55, 56). The decedent was looking at the bus as he headed toward it (Transcript p. 17). He was last seen 8 or 10 feet from the side of the bus and about a third of the way back from the front of the bus (Hughes affidavit p. 3; Transcript p. 59). The bus came within inches of a telephone pole located on the south parking of the street as its driver swung the bus back to the right (Hughes affidavit p. 3; Transcript pp. 5, 56).

There were no eye-witnesses to the decedent's fall, and the manner in which he received his injuries is demonstrable only by circumstantial evidence. The last persons to see the decedent before his fall were the bus driver and the passenger (Defendant's requested admission 48 served March 29, 1950 and plaintiffs' substituted and amended admission thereof served July 20, 1950). The last persons observing the bus prior to the accident were the bus driver and the passenger (Defendant's Interrogatory 8 served March 15, 1950 and plaintiffs' responses thereto served March 18, 1950). Neither the bus driver nor the passenger heard or felt any impact (Transcript pp. 5, 8, 59; Hughes affidavit p. 4). A blow on the outside portion of the bus may be heard inside the bus because the bus construction amplifies the sound. After a bus has been serviced and gassed, the attendant outside at the rear of the bus signals the operator by striking the rear of the bus with his hand, and this sound is audible to the operator inside the bus at the front end. (Hughes affidavit p. 5).

After the bus was swung back to the right, it proceeded northwesterly and was brought to rest heading into the north curb of Elm Street (Hughes affidavit p. 4; Transcript pp. 5, 23, 42). The decedent and his bicycle were found lying approximately in the center of the street, with the boy more south of center and the bicycle more north of center. The decedent was lying on his left side, with his head south of the center of the street. His body lay in an east-west direction, with his feet a little farther north than his head. His face was to the north or northwest and his head was resting on his left upper arm. His legs were still straddling the bicycle, with its handlebars about opposite his stomach. The bicycle was also lying on its left side to the north of the decedent, and it was facing or heading southwesterly with its wheels toward the north. The decedent fell towards, and not away from, the bus (Plaintiffs' requested admission 13 served March 14, 1950 and defendant's admission served March 23, 1950; stipulation dated April

5, 1950 and filed April 6, 1950; defendant's requested admission 22 served March 29, 1950 and plaintiffs' amended and substituted response served July 20, 1950; Hughes affidavit p. 4; Transcript pp. 10, 22, 32, 34).

The front wheels of the bus left tire marks on the pavement at the scene of the accident. The mark made by the left front wheel was about 4 feet from the south curb of the street at its closest point (Plaintiffs' second requested admissions 2, 3, 12, 13 served April 21, 1950 and defendant's admissions thereof served August 4, 1950). The tire marks were confined to the south half of Elm Street (Transcript pp. 25, 26, 44, 50; photographs). The tire marks began at points east of and ended at points west of where the decedent fell (Transcript pp. 25, 26). A pool of blood had run from the decedent's head toward the south curb and had collected at a spot about two feet south of the decedent's head. The decedent, as evidenced by disclosure of counsel and blood marks, was lying north of the tire marks at a spot opposite or north of the point where the tire marks came closest to the south curb (Transcript pp. 41, 43, 50, 51, 52; plaintiffs' second requested admission 6 served April 21, 1950 and defendant's admission served August 23, 1950).

The air brakes of the bus were set in such a manner so that their full application will not lock the wheels but will bring the bus down to a fast stop without actually skidding the tires (Hughes affidavit p. 5). The brake application at the time of the accident was not continuous or constant as the driver lost the brake sometime during the swerve (Transcript p. 56). Yet the tire marks were continuous (Photographs). The tire marks were caused by the sudden changes in the direction of the bus rather than by application of the brakes (Transcript p. 55; photographs). The tire marks were not made by locked wheels.

The bus and the bicycle did not make contact or collide (Defendant's requested admissions 27, 30 served March 29, 1950 and plaintiffs' substituted and amended admissions served August 18, 1950; Hughes affidavit p. 4; Transcript pp. 13, 24, 30, 42). The bus and the decedent did not make contact or collide (Transcript pp. 5, 8, 15, 30,

32, 46; Hughes affidavit p. 4; Peters affidavit pp. 2, 3; Dr. Phifer's first affidavit pp. 2, 3; Dr. Phifer's second affidavit p. 2; Defendant's requested admission 42 served March 29, 1950). The bus did not strike, run over, or collide with any object (Transcript pp. 5, 8, 13, 15, 24, 30, 32, 42, 46, 59; Hughes affidavit p. 4; Peters affidavit pp. 2, 3). The bus and the boy or the bicycle did not make contact or collide, and if the newly-painted bus had struck any object, the paint would have been scratched, scuffed or dulled (Peters affidavit pp. 2, 3).

The only doctor or medical attendant to examine the decedent following his accident was Dr. Phifer, who made an external examination of the entire body of the decedent shortly after 5:00 P.M. at St. Luke's Hospital in Davenport, Iowa (Defendant's Interrogatory 17 served March 15, 1950 and plaintiffs' responses served March 18, 1950; Transcript p. 2; Dr. Phifer's affidavits p. 1). Death was caused by a basal skull fracture with resultant brain injuries received at the time of his accident (Plaintiffs' requested admissions 16, 18 served March 14, 1950 and defendant's admissions thereof served March 23, 1950). The decedent also incurred at the time of his accident facial abrasions, with an underlying contusion, which were confined to the left cheek and left temporal region, a hematoma of the left upper eyelid and hemorrhage from ears, nose and mouth. Except for these findings, the medical examination disclosed no abnormal motion in the extremities, no crepitus, no broken or crushed bones, and no contusions or lacerations. There were dirt particles in the abrasions of the left face. These abrasions were "pavement burns". These abrasions and the underlying contusion were caused by contact of the decedent's face with the pavement of Elm Street. The basal skull fracture was produced by the contact of the left portion of decedent's face, marked by the abrasions, with the pavement of Elm Street. The hematoma was caused either by the basal skull fracture or the contusion in the left temporal region. The defendant's bus did not run over or contact any portion of the decedent's body (Transcript pp. 2, 3;

Dr. Phifer's first affidavit pp. 1, 2, 3; Dr. Phifer's second affidavit pp. 1, 2; defendant's requested admissions 33, 34, 35, 36, 37, 38, 39, 41, 42 served March 29, 1950; plaintiffs' second requested admissions 23, 24, 25 served April 21, 1950 and defendant's admissions served August 23, 1950).

The Court further finds that plaintiffs' amended and substituted responses to defendant's requested admissions numbered 33, 34, 35, 36, 37, 38, 39, 41 and 42 were made without any inquiry of Dr. Phifer, contrary to the plain import of the rulings and order of this Court dated June 30, 1950, and that such responses are improper and not made in good faith and that the aforesaid requests are therefore deemed admitted.

The Court further finds that no evidence exists and none was disclosed during the submission of this motion for summary judgment which *per se* or by inference indicates that the defendant's bus crowded or surprised the decedent or was being operated in a careless or reckless manner, or at an excessive or improper speed, or that the bus was not under control prior to, including and following decedent's accident; nor was any disclosure made of any facts indicating a failure of the bus operator to take due precautions for the protection of the decedent; nor does any fact exist upon which may be predicated any negligence of the bus driver.

The Court further finds that, while minor discrepancies exist as to some facts contained in the several affidavits submitted to the Court, there is no genuine issue in this case as to any material fact.

## IV. Conclusions of Law

■ The purpose of summary judgment is to determine whether a genuine issue exists as to any material fact or to ascertain what material facts are actually and in good faith controverted. The Court, from the evidence before it and the disclosures made by counsel, is fully satisfied that no genuine issue exists in this case as to any material fact. The facts are not in dispute. The conflict does exist between the theories which counsel draw from the admitted or established facts.

■ It is plaintiffs' theory that because the decedent suffered a basal skull fracture the defendant's bus must have struck the decedent. However, the undisputed facts show no contact between the bus and the boy, and the Court, even without the assistance of Dr. Lamb, takes judicial notice that persons have sustained and may sustain basal skull fractures in falls from their own height. Plaintiffs also contend that the bus driver attempted to pass the decedent while both bus and bicycle were traveling in the north half of Elm Street. However, the plaintiffs proffered no evidence, nor indicated the existence of any fact, which conflicted with the defendant's evidence that the bus was in the south half of the street and the decedent was near the north curb. The two photographs corroborate the location of the bus since they disclose the points of beginning of the tire marks to be in the south half of the street, and these marks were first impressed on the pavement when the direction of the bus was first changed. The plaintiffs also contend that the decedent fell to the pavement at the approximate location where his front bicycle wheel tipped sharply toward the bus, but there is no evidentiary basis for this contention and the facts subscribed to by the bus passenger and driver indicate that the decedent traveled some distance southwesterly after his bicycle changed its course of direction.

■ The several specific allegations of negligence set forth in Paragraph 6 of plaintiffs' petition have been duly considered by the Court. The sufficiency of the allegations of a complaint, however, do not determine the motion for summary judgment. In many cases, there is no genuine issue of fact although the issue is raised by the formal pleadings. If the pleadings determined a motion for summary judgment, Rule 56 would be a nullity for it would merely double the motion to dismiss. Christianson v. Gaines, 1949, 85 U.S.App. D.C. 15, 174 F.2d 534; William J. Kelly Co. v. R. F. C., 1 Cir., 1949, 172 F.2d 865. The authorities and the text writers generally agree that Rule 56 permits one to pierce the allegations of fact contained in a pleading to determine what, if any, mate-

rial facts are in controversy. See, for example, Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265. Counsel for both parties do not take issue with this proposition. The Court has found that no genuine issue exists as to any material fact and has reached the conclusion, for reasons hereinafter set forth, that the defendant is entitled to judgment as a matter of law.

■ 1. Supporting and opposing affidavits employed in summary judgment procedure must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Rule 56(e). The affidavits of Drs. Van Allen and Hyndman do not meet the requirements of Rule 56(e). Under Iowa law an expert witness may not base an opinion in whole or in part upon the opinions of others, whether lay or expert, even though such opinions appear in evidence. Ipsen v. Ruess, 1948, 239 Iowa 1376, 35 N.W.2d 82. Under Iowa law, the expert testimony of a medical witness is incompetent where it is based in part upon hearsay statements of third persons. Switzer v. Baker, 1916, 178 Iowa 1063, 160 N.W. 372. The affidavits of Drs. Van Allen and Hyndman are objectionable as being based in part upon opinion or hearsay or both. Dr. Hyndman's affidavit is admittedly based only upon the affidavit of his colleague.

■ Under Iowa law, hypothetical questions to an expert upon direct examination should be based upon facts the testimony tends to establish. Ipsen v. Ruess, 1948, 239 Iowa 1376, 35 N.W.2d 82. See Jones on Evidence, 4th ed., 1938, Vol. 2, Section 371. Dr. Van Allen, in advancing an opinion on contact, is ostensibly basing his opinion on documents reciting facts which show an absence of contact. The opinions of Drs. Van Allen and Hyndman are of slight probative value as applied to the facts of this case since they are not based on facts which the testimony tends to establish.

■ Under Iowa law, the evidence must be of a type properly the subject of opinion testimony and, in the case of an expert witness, evidence is properly the subject of opinion testimony if the expert has special knowledge not possessed by the jury. Grismore v. Consolidated Products Co., 1942, 232 Iowa 328, 5 N.W.2d 646. See Van Norman v. Modern Brotherhood, 1909, 143 Iowa 536, 121 N.W. 1080. Dr. Van Allen does not deal with the cause of death, admittedly a basal skull fracture with resultant brain injuries, but he deals with the manner in which the injuries might have been inflicted. This does not require any especial talent. The affidavits of Drs. Van Allen and Hyndman deal with a matter which is not properly the subject of opinion testimony.

■ Opinions not supported by facts, and which are contrary to the physical facts and do violence to scientific principle or reason, are robbed of all probative value. Weinberg v. Northern Pac. Ry. Co., 8 Cir., 1945, 150 F.2d 645. The uncontroverted facts show that the boy's skull was not crushed; there were no tire marks on his face, helmet, or clothes; the passenger and driver felt no impact; yet Dr. Van Allen states that—"It is also possible that the type of head injury may have been due to the wheels of the bus passing directly over the boy's head. * * *" Paraphrasing the words of Judge Hutcheson in Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305, the tendered evidence is in its nature too incredible to be accepted by reasonable minds. The affidavit of Dr. Van Allen is without legal probative value insofar as it purports to explain the manner in which this tragic accident occurred.

■ The affidavit of Donald L. Wikert includes the statement that the decedent, at the time of his examination by the embalmer, had a small bruise on the knuckle of his left hand and another on the outside of his left forearm. While this apparently creates a conflict with the medical findings if one assumes the bruises were present and had then developed at the time of the medical examination, there is no inference that the bruises were caused by contact with the bus or were incurred at the time of the accident. The affidavit

contains facts which are immaterial, having been established by discovery procedure, and facts which are irrelevant since they create no inference as to the manner in which the injury was incurred. The affidavit of Mr. Wikert does not create any genuine issue of material fact. The affidavit of Bonnie Dulansky and the first affidavit of Walter A. Newport, Jr. contain no facts which support plaintiffs' cause of action and do not controvert any material facts in this case. These affidavits constitute in essence an attack upon the credibility of Dr. Phifer made by one of the plaintiffs and her counsel. However, a court may not inquire into the credibility of witnesses on a motion for summary judgment. It is not the function of a court on such a motion to resolve issues of fact but only to determine whether issues of fact exist. An affidavit may be used to show a genuine issue of fact but it may not be used to decide such an issue. See Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766. Moreover, the Court must disregard those portions of these affidavits which are based on hearsay and information and belief. Rule 56(e) admits of no other conclusion. And see Chapman v. United States, 8 Cir., 1943, 139 F.2d 327; State of Washington v. Maricopa County, 9 Cir., 1944, 143 F.2d 871; Veeder-Root, Inc., v. Henrietta, D.C.Conn.1943, 52 F.Supp. 918. The affidavit of Mr. Newport appears largely objectionable under the ruling of the Chapman case, supra.

■ Annexed to plaintiffs' reply brief submitted several days after the motion had been argued were an unsigned statement of Andrew Neilson and a second affidavit of Walter A. Newport, Jr. The former, patently, cannot be considered. The latter is based upon hearsay and not upon personal knowledge as required and falls squarely under the condemnation of the Eighth Circuit Court decision in the Chapman case, supra, where an affidavit of counsel similarly set forth a conversation between counsel and another.

■ While a court should not under summary judgment procedure pass on the sufficiency of the evidence, the sufficiency of the evidence may become a question of law for decision by the court if there is an absence of proof sufficient to support a claim or defense. The affidavits submitted by plaintiffs in resistance to summary judgment do not disclose a single material fact in support of plaintiffs' cause of action and do not controvert by any facts therein the facts contained in the defendant's affidavits. Somewhere along the line, a party in order to resist a motion for summary judgment must by affidavit or other proof which may properly be considered by the court disclose the existence of facts which genuinely controvert the material facts established by the movant. For this purpose, the affidavits of the plaintiffs have no probative value.

■ 2. Rule 56 may not be used by a court for a trial by affidavits of disputed questions of fact, but when the rule is invoked by either party and a showing is made by the movant it is incumbent upon the resisting party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint or that he has a ground of defense fairly arguable and of a substantial character. Pen-Ken Gas & Oil Corp v. Warfield Natural Gas Co., 6 Cir., 1943, 137 F.2d 871. Of course, the burden of establishing the non-existence of any genuine issue of fact rests upon the moving party and all doubts should be resolved against him. Many authorities subscribe to the proposition that if no counter affidavits are filed in resistance to a motion for summary judgment, the facts contained in the affidavits in support of such motion must be taken as true. Geller v. Transamerica Corp., D.C.Del. 1943, 53 F.Supp. 625, affirmed 3 Cir., 151 F.2d 534; Allen v. Radio Corp., D.C.Del. 1942, 47 F.Supp. 244; Winrod v. McFadden Publications, Inc., D.C.Ill.1945, 62 F. Supp. 249; National War Labor Board v. Montgomery Ward & Co., 1944, 79 U.S. App.D.C. 200, 144 F.2d 528; Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335; see Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265. A party's failure to file counter affidavits may constitute an admission of the truth of the fact set forth in the movant's affidavits. However, this Court apprehends that a party's fail-

578

ure to file counter affidavits would not entitle the movant to summary judgment if there otherwise existed in the record an issue of material fact to be tried. For this reason, the Court has carefully examined and collated the facts disclosed by the discovery procedure with the facts contained in defendant's affidavits, and is satisfied that the defendant has carried the burden of establishing the nonexistence of any. genuine issue of material fact.

■ 3. Interrogatories may be considered by the court in a motion for summary judgment. See Munoz v. Merchants' Nat. Bank, D.C.Pa.1943, 49 F.Supp. 588; Kohler v. Jacobs, 5 Cir., 1943, 138 F.2d 440; Imported Liquors Co. v. Los Angeles Liquor Co., 9 Cir., 1945, 152 F.2d 549; Moore's Federal Practice, 2d ed., Sec. 33.29, pp. 2343, 2344.

■ 4. A denial of a requested admission does not of itself create an issue of fact for the purposes of summary judgment. Counsel for the respective parties, in an unusual display of unanimity, have each subscribed to this proposition, and the Court believes it to be correct although there is a dearth of authority dealing specifically with the matter. In the case of Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335, the plaintiff in response to certain requests denied that he suffered his injuries in the manner described in a requested admission. The defendant subsequently moved for summary judgment with supporting affidavits. The plaintiff did not submit counter affidavits. Summary judgment was awarded the defendant. The decision holds in part that plaintiff's denial of the requested admission was not sufficient to offset the sworn affidavit of fact filed by the defendant and that it was incumbent upon the plaintiff to do more, the court pointing out that the plaintiff's failure to offer in evidence counter affidavits or testimony of some kind to offset defendant's affidavits warranted the lower court in finding that no genuine issue of a material fact existed. It is the admission of a request and not the denial which must be considered. If one may pierce allegations of fact in a pleading in a motion for sum-

mary judgment, one may likewise prove that a denial of a request is not supported by evidence. Take, for example, plaintiffs' allegation of contact and their denial in the present case of defendant's request that there was no evidence indicating contact between the bus and the decedent. The defendant's request was on summary judgment supported by affidavits whereas the plaintiffs failed to support their allegation or denial or to controvert the affidavits by any proffered facts. If a party denies a request, he cannot thereafter resist a motion for summary judgment, with which is submitted an affidavit supporting the facts contained in the request, unless the party who denied the request produces some substantial and genuine evidence supporting his denial which would create an issue of material fact. For this reason, the Court has scrutinized the record to determine whether any facts exist in support of any denied requests appearing in the discovery procedure.

■ 5. At the hearing on the motion for summary judgment, it is the duty of counsel to disclose fully what the evidence will be when the issue is raised by the motion, and it is the duty of the court to proceed on the disclosures thus made. See Carr v. Goodyear Tire & Rubber Co., D.C. Cal.1945, 64 F.Supp. 40; Simmons v. Charbonnier, D.C.Ga.1944, 56 F.Supp. 512; Bowles v. Ward, D.C.Pa.1946, 65 F.Supp. 880; Sartor v. Arkansas Natural Gas Corp., 5 Cir., 1943, 134 F.2d 433, reversed on other grounds 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. The Court interrogated counsel at the hearing on the motion with especial regard to the evidence, or lack of it, surrounding plaintiffs' allegations of negligence; but counsel for plaintiffs failed to produce facts or testimony or proof of some kind which would support the complaint and offset the affidavits of the defendant. The disclosures made by counsel were marked only by a failure of plaintiffs' proof and a controversy as to which theories the established facts tend to support.

■ 6. The issues in this case should be briefly reviewed. In order to recover against the defendant, the plaintiffs

must establish by a preponderance of the evidence (a) the negligence of the defendant's bus operator, (b) that such negligence was the proximate cause of the death of the decedent, and (c) the freedom from contributory negligence on the part of the decedent and his father. Contributory negligence of the father would bar his recovery. Contributory negligence of the decedent would bar all recovery. The Iowa presumption against contributory negligence of a minor would doubtless cast upon the defendant the burden of producing evidence of capacity, but whether or not the present state of the record discloses capacity or lack of capacity need not be considered because of the failure of evidence to support the other material issues.

■■■■■ The first issue is contact. If there had been contact, the inferences to be drawn from such fact might justify or require the submission of the case to a jury. But there is not a scintilla of evidence of contact. It might be well to observe parenthetically that under Iowa law even a scintilla of evidence is not enough to make an issue for the jury. In re Kenny's Estate, 1943, 233 Iowa 600, 10 N.W.2d 73; Spaulding v. Miller, 1935, 220 Iowa 1107, 264 N.W. 8; Bales v. Bales, 1914, 164 Iowa 257, 145 N.W. 673; Mast v. Illinois Cent. R. Co., D.C. Iowa 1948, 79 F.Supp. 149, affirmed 8 Cir., 176 F.2d 157. The bus, the boy and the bicycle were examined by disinterested witnesses as well as by employees of the defendant. Plaintiffs' theory that the bus must have struck the decedent is not supported by the facts. It must be ruled as a matter of law that there was no contact.

■■■■■ The second issue is the allegation of reckless and careless bus operation contained in Paragraph 6(a) of the complaint. There is absolutely no evidence to support such an allegation.

■■■■■ The third issue is the failure of the defendant to give any audible signal by bell or horn contained in Paragraph 6(c) of the complaint. It does not appear that the bus was equipped with a bell. By affidavit and discovery procedure the defendant disclosed that it gave no horn sig-

nal. The Court has found that the decedent was aware of the approaching and overtaking bus. A person is bound to notice what is in plain sight in the direction in which he looks. Under Iowa law, a minor bicyclist who has knowledge of the presence of a vehicle which imparts to him the very thing a signal was intended to impart cannot predicate negligence on the failure to give a signal. See Ryan v. Trenkle, 1927, 203 Iowa 443, 212 N.W. 888. As a matter of law, the driver's decision not to sound his horn was not the proximate cause of the decedent's injury. Under the undisputed facts developed in this case, no duty arose on the part of the driver to sound his horn.

■■■■■ The fourth issue is the allegation of the failure of the defendant to take due precautions for the protection of the minor bicyclist, contained in Paragraph 6 (d) of the complaint. There is absolutely no evidence to support this allegation. Furthermore, even where a motorist actually strikes a bicyclist he may not be charged with negligence where the accident is due to an unexpected movement of the bicyclist, the consequences of which the motorist could not avert; and a motorist is not ordinarily under a duty of anticipating that a bicyclist whom he is approaching will suddenly fall or be thrown from his bicycle. See Cantrell v. H. G. Hill Stores, La.App. 1940, 193 So. 389; 60 C.J.S., Motor Vehicles § 380, page 935; 42 C.J. page 1030, n. 94. The only facts in this case tend to establish due care from the time the bus entered the bridge through the time it avoided the bicyclist.

■■■■■ The fifth issue is the allegation of lack of control contained in Paragraph 6(e) of the complaint. Again, the record discloses no evidence of lack of control. Under the undisputed facts developed in this case, the bus operator had the bus under control and by his action avoided striking either the boy or the bicycle. It is plaintiffs' contention that the manner in which the decedent received his injuries must be submitted to the jury, who are at liberty to find contact and fault. However, there is nothing more than the merest guess

580

or conjecture that the defendant had anything to do with the tragic accident. Under Iowa law, verdicts cannot and must not be based on guesses or conjectures. Before a fact can be said to be proven, even prima facie, there must be some substantive evidence of the existence of the fact. A jury ought not be turned loose in the field of speculation and guess as to what the facts are. In re Estate of Held, 1941, 231 Iowa 85, 300 N.W. 699.

The sixth issue is the allegation of excessive speed and passing the decedent, contained in Paragraph 6(f) of the complaint. An inference of excessive speed might be drawn if the tire marks were made by locked wheels and if the bus driver and passenger had testified as to excessive speed. But the tire marks were made by the changes in direction of the bus rather than by braked or locked wheels, which negatives any inference of speed, and the only witnesses to speak testified to the moderate speed of the bus. A speed of about 18 miles per hour cannot be ruled excessive in this case. No facts suggest that the defendant was negligent in passing or attempting to pass the decedent, and the Court is aware of no rule prohibiting a bus from passing a minor bicyclist under the circumstances of this case. The defendant breached no common-law duty sought to be imposed by this issue.

The seventh issue is the allegation relating to assured clear distance ahead doctrine, contained in Paragraph 6(g) of the complaint. The doctrine has no application here and the allegation is immaterial and irrelevant to the facts of this case.

The eighth issue is the allegation of failure to stop the bus in time, contained in Paragraph 6(h) of the complaint. Under the conceded facts, the decedent first changed his direction as his bicycle wheel tipped sharply toward the bus when the front of the bus had reached a point about opposite the rear of the bicycle. There was no apprehension of danger before this time. The allegation is immaterial and irrelevant to the facts of this case.

It is the conclusion of the Court that the operator of the defendant's bus was not guilty of negligence in any of the respects alleged in the complaint, that the record fails to indicate any direct evidence or any facts from which an inference of negligence could be drawn which should be submitted to the jury, and that the proximate cause of the death of the decedent cannot be ascribed to any act or omission of the defendant.

7. The Court must also rule that defendant's requested admissions 33, 34, 35, 36, 37, 38, 39, 41, and 42, served March 29, 1950, are deemed admitted by reason of improper and bad faith responses made thereto by plaintiffs after the Court had granted additional time in which to file amended and substituted responses.

8. Under Iowa law, a theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion which can fairly or reasonably be drawn from them. This does not mean that a plaintiff must disprove or negate every other suggested cause. It does mean that when a plaintiff seeks to establish by circumstantial evidence that the alleged negligence was the proximate cause of his injury, his theory based on the evidence must be reasonably probable, not merely possible, and more probable than any other theory based on such evidence, or a verdict must be directed against him. Westenburg v. Johnson, 1935, 221 Iowa 134, 264 N.W. 18; Asbach v. Chicago, B. & Q. Ry. Co., 1888, 74 Iowa 248, 37 N.W. 182; Central Nat. Bank & Trust Co. v. Lederer Strauss & Co., 1945, 236 Iowa 16, 17 N.W.2d 817; Klumb v. Iowa State Traveling Men's Ass'n, 1909, 141 Iowa 519, 120 N.W. 81; O'Connor v. Chicago, R. I. & P. Ry. Co., 1906, 129 Iowa 636, 106 N.W. 161; Whetstine v. Moravec, 1940, 228 Iowa 352, 291 N.W. 425; Mast v. Illinois Cent. R. Co., D.C.Iowa 1948, 79 F.Supp. 149; see Massachusetts Protective Ass'n v. Mouber, 8 Cir., 1940, 110 F.2d 203; Wesson v. United States, 8 Cir., 1949, 172 F.2d 931. The facts in the Westenburg

case, supra, tended rather strongly to support the plaintiffs' theory, yet the Iowa court after an extended discussion of the rule held that a motion for directed verdict should have been sustained. In the present case, whether or not plaintiffs' theory is possible, it is not reasonably probable and is not more probable than the defendant's theory. As a matter both of fact and law, the evidence disclosed in this case fails to support plaintiffs' theory. If the plaintiffs were to submit their record in this case to an Iowa court, a directed verdict would have to be sustained for the defendant at the close of plaintiffs' evidence.

■■■■ 9. There is authority for the proposition that if, under the facts developed, the court at a trial would be required to direct a verdict for the moving party, then summary judgment should be entered. Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766; Lindsey v. Leavy, 9 Cir., 149 F.2d 899; Fishman v. Teter, 7 Cir., 1943, 133 F.2d 222; Culhane v. Jackson Hardware Co., D.C.S.Dak.1938, 25 F.Supp. 324; Sadler v. Guardian Life Ins. Co., D.C.Fla. 1941, 40 F.Supp. 772; see Christianson v. Gaines, 1949, 85 U.S.App.D.C. 15, 174 F.2d 534; Albert Dickinson Co. v. Mellos Peanut Co., D.C.Ill.1949, 81 F.Supp. 626, reversed on other grounds, 7 Cir., 179 F. 2d 265; Sartor v. Arkansas Natural Gas Corp., 1943, 321 U.S. 620, 64 S.Ct. 724, 727, 88 L.Ed. 967, where the court in dictum announced that "a summary disposition of issues of damage should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party". The Court subscribes to the proposition. If the evidence, construed most favorably in plaintiffs' behalf, would justify or require a directed verdict against him, then the Court should enter summary judgment for the defendant. The avoidance of unnecessary trials involving no material and controverted facts is the prime purpose of Rule 56. In the present case, the facts are not challenged by contradictory evidence. Irrespective of this, if it may be said that the plaintiffs have tendered any evidence in support of their cause of action, it must be ruled to be no more than a scintilla of evidence which could not support a verdict in their favor. And, irrespective of the foregoing, under the Iowa doctrine of equal probabilities the circumstances considered in plaintiffs' favor still do not render plaintiffs' theory reasonably probable and more probable, than any other theory since the evidence is at least equally consistent with two opposing hypotheses. The Court has given due consideration to the problem of credibility, but even if the jury were to disbelieve the defendant's evidence, still the plaintiffs' evidence is insufficient to support a verdict in their favor. A plaintiff must succeed by the strength of his own case and not the weakness of his adversary's. This case was set for trial subject to the determination of the motion for summary judgment. The Court is satisfied that no genuine issue of material fact exists and that upon trial it would perforce direct a verdict in favor of the defendant. Summary judgment should therefore be entered for the defendant.

■■■■ 10. It would not unduly prolong this opinion to state some of the principles governing the application of Rule 56, which were recently reviewed and promulgated in Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766: (a) Factual issues are not to be tried or resolved by summary judgment procedure, but only the existence of a genuine and material fact issue is to be determined, and if such an issue exists summary judgment may not be granted, at least not in its entirety; (b) In making this determination, doubts—real not fanciful—are to be resolved against the granting of summary judgment; (c) There may be no genuine issue even though there is a formal issue and neither formal denial nor general allegations may, in every case, defeat summary judgment, but whether a situation falls into the category of formalism or genuineness cannot be decided in the abstract; (d) If conflict appears as to a material fact, the summary procedure does not apply unless the evidence on one or the other hand is too incredible to be accepted by reasonable minds or is without legal probative force even if

582

true; (e) To support summary judgment, the situation must justify a directed verdict insofar as the facts are concerned.