93 So.2d 94 (1957)
Abraham SHAFFRAN, Appellant,
v.
J.E. HOLNESS, Jr., a/k/a Joseph E. Holness, Jr., and ---- Holness, his wife, if married, and Mildred S. Holness, a single woman, Appellees.
Supreme Court of Florida, Special Division B.
March 6, 1957.
Ward & Ward, Simon & Hays, Miami, John E. Born and Warwick, Paul & Warwick, West Palm Beach, for appellant.
Farish & Farish, West Palm Beach, and Wm. A. McRae, Jr., Bartow, for appellees.
B.F. Paty, West Palm Beach, as amicus curiae.
O'CONNELL, Justice.
Abraham Shaffran, the appellant, was the plaintiff in an action to foreclose a second mortgage on real property. The appellees, Joseph E. Holness, Jr. and Mildred S. Holness, were the defendants.
To the plaintiff's bill of complaint, the defendants filed an answer in which they denied making the mortgage and note and also alleged that:
"10. * * * the alleged note and mortgage * * * does not comply *95 with chapter 687 of the Florida Statutes [F.S.A.] and is in violation of said chapter 687, Florida Statutes [F.S.A.], and as such is a void and usurious loan contract.
"11. That there has been certain amounts of monies demanded, charged and accepted and/or exacted from the defendants by the plaintiff or by his officer, agent or other representative of the plaintiff that are in violation and do not conform to chapter 687, Florida Statutes [F.S.A.]."
In due course the plaintiff filed a motion for summary final decree without supporting affidavits. The defendants then filed their motion for summary final decree, to which they attached affidavits executed by themselves and an affidavit executed by Joseph E. Holness, Sr., father of Joseph E. Holness Jr.
Depositions were taken of the defendants by the plaintiff and the defendants took the deposition of plaintiff and of A. Neil Sawyer, one of the partners of United Mortgage Company (not inc.). As will appear below, United Mortgage Company, mortgage brokers, arranged the making of the mortgage in question between the parties to this action. The mortgage company will be referred to herein as United.
Thereafter the parties entered into a stipulation providing:
"* * * That depositions have been taken by both the plaintiff and defendants and that there have been affidavits filed by the defendants in response and in support of the respective motions for summary final decree. That neither party desires and does hereby agree that they will not submit any further affidavits or evidence and that the respective motions for summary final decree will be considered by the Court after argument on the record, pleadings, affidavits and depositions as are now on file in the cause. * * *"
The chancellor entered a summary final decree finding the note and mortgage to be usurious in violation of F.S. Sections 687.03 and 687.07, F.S.A., declaring the mortgage and note to be null and void, and assessed penalties against the plaintiff. The plaintiff petitioned for rehearing which was denied. The chancellor then entered a final decree, affirming the summary final decree, except for correction as to a finding relating to the date of execution of the note and mortgage.
From the pleadings, the affidavits, the depositions and the exhibits attached to the depositions, which were before the chancellor when he entered his summary final decree and which are now before us, the following facts appear.
Defendant Joseph E. Holness, Jr. was in need of funds. He made this known to an "associate friend", Harry Silett, who put him in touch with Murray Sawyer, a representative of United Mortgage Company and brother of A. Neil Sawyer, abovementioned. Holness, Jr. advised Murray Sawyer that he wanted to borrow $20,000 through a second mortgage on his home. United Mortgage Company knew plaintiff as one who made mortgage loans. It appears that they had arranged one or more loans with plaintiff prior to the one in controversy here. The mortgage company contacted plaintiff and with Murray Sawyer and Holness, Jr. plaintiff inspected the property proposed to be mortgaged. It does not appear that it was made known to Holness, Jr. that plaintiff was the prospective lender. Holness, Jr. stated he thought plaintiff was an appraiser for United. After looking at the property plaintiff advised United that he would only lend $15,000. Holness, Jr. accepted this figure.
The defendants executed a document wherein they engaged the services of United to secure for them a second mortgage loan in the sum of $15,000, payable at the rate of $500 per month, said monthly payments to include interest at 10% per annum. This document bears date December 5, 1954 and provides that defendants were *96 to pay United the sum of $3,000, said sum to cover their services and all costs of the loan.
The defendants also executed a note and mortgage in accordance with the terms above set forth, both bearing date of December 5, 1954. A closing statement prepared by United dated December 13, 1954 was also signed by defendants.
Although defendants admit that the signatures on the above documents are theirs, in both their depositions and affidavits they contend that the documents were not completed when they signed them and that they signed them not on December 5, 1954 but on December 13, 1954. They insist that they visited the office of United together on only one occasion, December 13, 1954 the day the loan was closed, and that they signed no documents on any other occasion.
The loan was closed on December 13, 1954 at which time United gave defendants the sum of $11,881.43, which according to the closing statement was the sum of $15,000, less the sum of $3,000 mentioned in the agreement abovementioned and less the sum of $118.57 for additional hazard insurance on the mortgaged property.
Defendants say that they protested the deductions but were told by United that if they wanted the money they would have to take it with the above deductions being made. Defendants accepted the money.
Defendants say that they did not know plaintiff was the lender until they received a letter dated December 21, 1954 from United's attorney advising them to make their payments to plaintiff. They say they thought they were borrowing from United.
Defendants made a total of six (6) monthly payments in accordance with the mortgage. Some payments were delinquent when made. On one of these occasions, the attorney for United wrote defendants demanding payment on behalf of plaintiff.
It appears that plaintiff, through his attorney who represented him in the making of the loan, gave to United the sum of $15,000 by cashier's check dated December 14, 1954 and it follows that United had advanced the sums necessary to close the loan the previous day, December 13th.
After argument on the motions for summary final decree the chancellor entered such a decree, in which he stated that he found three questions to be answered: (1) did the note, mortgage and charges in connection therewith constitute a violation of F.S. Sec. 687.03, F.S.A. by charging more than 10% interest, or (2) did they constitute a violation of F.S. Sec. 687.07, F.S.A. by charging more than 25% interest and (3) was United Mortgage Company the agent of plaintiff?
The chancellor in answering question (1) found that plaintiff charged interest from December 5, 1954, the date on the note and mortgage, but that defendants did not receive the proceeds of the loan until the loan was closed eight days later, i.e. on December 13, 1954; that interest for these eight days amounted to $32.24, that this constituted a charge in excess of 10% per annum by the sum of $32.24 and therefore the transaction was usurious and in violation of F.S. Sec. 687.03, F.S.A.
It appears to us that the chancellor could properly dispose of this issue on motion for summary final decree because the facts necessary to determination of this question are not disputed and were in the record before the chancellor.
However, we must reverse the chancellor on this first question because we have previously decided the law to be contrary to his decision.
We find no basis in the record before the chancellor, and now before us, to show that the note was predated or the closing delayed with intent to charge interest to the defendants on money which they had not yet received so as to circumvent the usury statute. It is a necessary, wise, and common practice on the part of lenders, both institutional and *97 individual, before proceeds of the loan are disbursed to require that the note and mortgage be executed and recorded and that some evidence, such as an attorney's opinion of title, be given to show that the mortgage enjoys the intended priority as a lien on the property involved. In such transactions an adjustment is usually made in the payment schedule so that interest is charged only from the date the funds are disbursed to the borrower.
There is nothing in this record to indicate that this transaction was handled in any way that would justify the imputation of usurious intent. It is our view that the failure to abate interest until the actual closing was an error in closing which should be adjusted as such an error rather than to be construed as constituting usury. Mindlin v. Davis, Fla. 1954, 74 So.2d 789, and cases therein cited.
The chancellor answered his questions (2) and (3) above, by finding that United was the agent of plaintiff and that the sum of $3,000.00, with exception of certain items of costs which he held proper charges against defendants, should be added to the interest charged by plaintiff to determine the amount of excessive charges. He found that these charges when added to the interest charged exceeded 25% per annum in violation of F.S. Sec. 687.07, F.S.A. He assessed penalties according to F.S. Sections 687.03 and 687.07, F.S.A.
It is to be noted that defendants do not contend and the chancellor did not find that plaintiff himself exacted any commission or bonus, or that he withheld any part of the monies represented by the mortgage and note.
While the chancellor could from the undisputed evidence before him determine on motion for summary final decree the amount of the charges made by United, we think he erred in determining the factual question of agency in such proceedings.
It is obvious that there was a genuine issue of material fact involved, i.e. the question of whether United was the agent of plaintiff or of defendants. In order to determine that there was such an issue we need only look to the loan application and brokerage contract, by the terms of which defendants engaged United to act for them in procuring a second mortgage loan and agreed to pay United the sum of $3,000 for such services and the costs incident to the loan. While defendants contend that this document was not completed when they executed it, they admit they signed it. The document was a printed form. The printed portion thereof is clear and unambiguous in its meaning. It made United the agent of defendants. Nowhere in the record before us do defendants charge or by sufficient facts show that United was the agent of plaintiff.
And if it be contended that the matter of agency is not disputed by plaintiff, our opinion is he did not dispute it because it was not sufficiently raised by defendants. The answer of defendants raises the question only in the general terms set forth in the second paragraph hereof. The affidavits of the defendants are silent on the question. Their depositions do not charge agency between plaintiff and United. On the other hand, A. Neil Sawyer in his deposition specifically stated United was the agent of defendants. The loan application on its face makes United the agent of defendants. Plaintiff in no way admitted that United was his agent. Whether disputed or not there was in this cause a question of material fact not settled by the record but necessary to be determined in disposition of this cause.
Summary proceedings under 30 F.S.A. Fla. Rules of Civil Procedure, rule 1.36 may be used only to determine whether or not there is a genuine issue of material fact to be determined. Factual issues may not be tried or resolved in such proceedings. Johnson v. Studstill, Fla. 1954, 71 So.2d 251. And a judgment should not be rendered in such proceedings unless the facts are so crystallized that nothing remains but questions *98 of law. Yost v. Miami Transit Co., Fla. 1953, 66 So.2d 214.
Nor is it material that both plaintiff and defendants had each moved for summary final decree on the basis that there was no genuine issue of material fact, for the court is not required to so rule, nor does it follow that there is actually no such issue, merely because both parties so contend. Begnaud v. White, 6 Cir., 1948, 170 F.2d 323; Walling v. Richmond Screw Anchor Co., 2 Cir., 1946, 154 F.2d 780, certiorari denied 1946, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640.
Further the moving parties have the burden of showing the absence of a genuine issue of material fact and all doubts as to existence of such fact must be resolved against them. Williams v. City of Lake City, Fla. 1953, 62 So.2d 732. If movant's showing is inadequate or an issue of fact otherwise appears the motion must be denied. Brensinger v. Margaret Ann Super Markets, Inc., 5 Cir., 1951, 192 F.2d 458; Dulansky v. Iowa-Illinois Gas & Elect. Co., D.C.S.D.Iowa 1950, 10 F.R.D. 566.
It is clear to us that the defendants did not show the absence of a genuine issue of fact on the material question of agency involved herein and it was error for the court to enter the summary final decree and the subsequent final decree.
The defendants contend that the fact that the mortgage company advanced the funds necessary to close the loan on December 13, 1954, one or two days prior to the receipt of plaintiff's check for $15,000.00, is sufficient to make the mortgage company the agent of the plaintiff. They rely on the case of Sanford v. Kane, 1890, 133 Ill. 199, 24 N.E. 414, 8 L.R.A. 724. But in that case the court found the broker, himself, to be the lender which is not the situation here. We do not find that case to be authority upon which we could act in the case now before us.
It appears from the final decree that the chancellor considered the stipulation between the parties, as above recited, a waiver of trial.
We do not construe the stipulation to be of this effect. Nevertheless, assuming for the purposes of argument that the stipulation amounted to a waiver of trial we would still have to reverse the decree, for there are not sufficient facts from which the chancellor could properly conclude that United was the agent of plaintiff.
We have decided by this opinion that the charging of interest by plaintiff for the eight days prior to closing should be considered as an error in closing, to be adjusted as such, and that it does not on the record before us constitute usury.
We have further decided that the defendants did not show the absence of a genuine issue of material fact in this cause so as to authorize the chancellor to have entered a final decree herein in summary proceedings.
We do not decide that United is the agent of either plaintiff or defendants or that the note and mortgage is or is not a usurious contract. These matters must be decided after a trial of this cause in accordance with law.
Nor do we decide the sufficiency of the allegations of the defendants' answer relating to the affirmative defense of usury since we do not feel such question is properly before us.
There is little doubt that the defendants in this cause paid dearly for the services of the mortgage broker. This case points up an existing and perhaps growing cancer which gnaws at and sometimes devours the necessitous borrower. The cancer is the mortgage broker who without regard to the ability of the borrower to extricate himself from the mortgage debt, hastens to assist him into an economic sink hole for what in many cases is an exorbitant fee or commission.
*99 But we can not correct this ill. It is for the legislature in its wisdom to give thought and action, if desired, to the problem. And it appears to us from the number and variety of the cases which come before us involving mortgages and usury, in many of which the borrower is assisted into his difficulty by a mortgage broker, that it is not enough that our statutes protect the borrower from excessive interest rates. It seems necessary if the intent and purpose of the usury statutes is to be accomplished that the borrower also be protected from excessive commissions and fees charged by the mortgage broker.
The summary final decree and the final decree herein are reversed and the cause remanded for further proceedings not inconsistent herewith.
TERRELL, C.J., and ROBERTS and DREW, JJ., concur.