958 So.2d 1076 (2007)
Michael C. WELLS and Shontell D. Kelley, Appellants,
v.
CITY OF ST. PETERSBURG, Florida, Appellee.
No. 2D06-3270.
District Court of Appeal of Florida, Second District.
June 15, 2007.
*1077 Nancy A. Lauten of Vaka, Larson & Johnson, P.L., Tampa, for Appellants.
John C. Wolfe, City Attorney, and William N. Drake, Jr., Assistant City Attorney, St. Petersburg, for Appellee.
WALLACE, Judge.
Michael C. Wells and Shontell D. Kelley (the Appellants) appeal a summary final judgment that dismissed their action against the City of St. Petersburg (the City) for injuries they sustained when a motorist who was fleeing from one of the City's police cruisers collided with their vehicle. The circuit court concluded, as a matter of law, that the City's police officers did not conduct a pursuit of the fleeing vehicle but instead initiated what amounted to "an unsuccessful traffic stop." Because there were genuine issues of material fact about the manner in which the officers responded to the fleeing vehicle, we reverse the summary final judgment.

I. The Facts and Procedural History
On December 17, 2002, the Appellants were both seriously injured when the vehicle in which they were riding was struck by a vehicle that was being driven by Anthony Harrington. Just before colliding with the Appellants' vehicle, Mr. Harrington had run a stop sign. The record does not reflect the speed of the Harrington vehicle at the moment before the crash occurred, but it must have been going very fast. The force of the collision was so great that the Harrington vehicle became airborne and landed nose first. After coming to rest, the Harrington vehicle burst into flames. Shortly before the crash, police officers employed by the City had attempted to stop Mr. Harrington for running a red light.
The Appellants subsequently filed an action against the City. In their complaint, the Appellants alleged that their injuries resulted from the actions of a City police officer who "negligently operated or maintained [his] motor vehicle by unreasonably pursuing the motor vehicle being operated by [Mr. Harrington] at a high rate of speed, so that it went out of control and collided" with their automobile. After the *1078 action was at issue, the City filed a motion for summary judgment. In the motion, the City contended that "no conduct of the Defendant City which could be characterized as either misfeasance or nonfeasance created a foreseeable zone of risk for the [Appellants]. Thus, the Defendant City had no common law duty to the [Appellants] and is protected by reason of the Public Duty Doctrine."
The City filed the depositions of two police officers in support of its motion. Both of these officers had participated in the attempt to stop Mr. Harrington. In opposition to the motion, the Appellants filed the affidavit of D'Angelo Hutchinson. Mr. Hutchinson had been a passenger in the Harrington vehicle during the incident. Unfortunately, the details about the events that preceded the collision were not fully developed either in the officer's depositions or in Mr. Hutchinson's affidavit. For example, there is no evidence of the speed at which either the police cruiser or the Harrington vehicle was traveling. Furthermore, neither the City nor the Appellants filed any affidavits or depositions from either an accident reconstruction expert or a police pursuit expert.
The officers on whose depositions the City relied were both members of the City's street narcotics unit. According to the officers, the incident occurred in a residential area of St. Petersburg at approximately 10:30 p.m. The two officers along with a third officerwere riding in an unmarked police cruiser that was equipped with a siren and interior flashing lights. At the time, the officers were on routine patrol and were not engaged in any particular law enforcement operation. Instead, they were preparing to finish their shift and to return to the police station.
The incident began when the officers saw the Harrington vehicle run a red light approximately two blocks ahead of them. They decided to stop the vehicle and to issue a citation to the driver for the traffic violation. The officers followed the Harrington vehicle for three to four blocks to catch up to it. Then the officers turned on their cruiser's siren and flashing lights.
At this point in the chain of events, the accounts given by the officers and by Mr. Hutchinson diverge sharply. The officers testified that very soon after they turned on their siren and flashing lights, the Harrington vehicle accelerated and began to pull away from them instead of slowing down and stopping. The officers pursued the Harrington vehicle for a very short distanceonly far enough for the officers to shine their spotlight on the vehicle's license tag and note the number. Then, acting in accordance with departmental policy regulating vehicle pursuits, the officers pulled over to the curb, stopped, and turned off their siren and flashing lights. They watched as the Harrington vehicle continued to speed away from them until it ran a stop sign and collided with the Appellants' vehicle. Only then did they drive to the scene of the collision.
Mr. Hutchinson offered a different version of what happened. In Mr. Hutchinson's account, as Mr. Harrington fled, the officers pursued him for a substantially greater distance than that to which they had testified. Moreover, Mr. Hutchinson said that "the police car continued pursuing/chasing the vehicle I was a passenger in continuously until the traffic crash occurred."

II. The Circuit Court's Order
The officers' deposition testimony and Mr. Hutchinson's affidavit were in conflict about the manner in which the officers had responded to Mr. Harrington's fleeing vehicle. Moreover, there was no direct evidence about the rate of speed at which either the police cruiser or the Harrington *1079 vehicle was traveling. The circuit court resolved these conflicts and gaps in the evidence as follows:
[The Court finds] that the record facts do not support the contention that a pursuit occurred on the part of the Defendant City of St. Petersburg's police officers, but rather, show an unsuccessful attempted traffic stop, and that the entire incident involved only a period of seconds during which the police followed the vehicle that was subsequently involved in the intersection collision with the [Appellants'] vehicle a relatively short distance and the speed was not excessive; and the court further [finds] that during the brief interval the record discloses no undue risk to the public posed by the police officers' actions. . . .
Based on this analysis, the circuit court entered the summary final judgment, and it dismissed with prejudice the Appellants' action against the City.

III. The Standard of Review
Review of a summary judgment is de novo, requiring a two-pronged analysis. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). First, a summary judgment is proper only if there is no genuine issue of material fact, viewing every possible inference in favor of the party against whom summary judgment has been entered. Huntington Nat'l Bank v. Merrill Lynch Credit Corp., 779 So.2d 396, 398 (Fla. 2d DCA 2000). Second, if there is no genuine issue of material fact, a summary judgment is proper only "if the moving party is entitled to a judgment as a matter of law." Aberdeen at Ormond Beach, 760 So.2d at 130.

IV. Discussion
The legal principles pertinent to the Appellants' claims against the City are well established. A law enforcement agency is not liable for injuries sustained during a hot pursuit of a fleeing offender on the basis that the hot pursuit itself is per se negligence. See City of Miami v. Horne, 198 So.2d 10, 12-13 (Fla. 1967). Instead, "the rule is that the officer should take such steps as may be necessary to apprehend the offender but, in doing so, not exceed proper and rational bounds nor act in a negligent, careless or wanton manner." City of Pinellas Park v. Brown, 604 So.2d 1222, 1226 (Fla. 1992) (citing Horne, 198 So.2d at 13). Thus "[t]he liability of a law enforcement agency for injury caused during a high speed chase depends on the manner in which the chase is conducted." Porter v. Dep't of Agric. & Consumer Servs., 689 So.2d 1152, 1155 (Fla. 1st DCA 1997).
Here, the conflicts between the officers' deposition testimony and Mr. Hutchinson's affidavit created genuine issues of material fact concerning the central liability issue in the casethe manner in which the officers had acted after Mr. Harrington accelerated and began to speed away from them. By finding that the officers had not pursued the Harrington vehicle, the circuit court resolved material disputed facts against the Appellants. The circuit court evidently concluded that the Appellants' claims against the City were so doubtful that they could not be won at trial. But a motion for summary judgment "is not a substitute for a trial on the merits. Hence, a trial court is precluded from resolving disputed issues of fact when considering such a motion." Hervey v. Alfonso, 650 So.2d 644, 646 (Fla. 2d DCA 1995). "A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law." Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985) (citing Shaffran v. Holness, 93 So.2d 94 (Fla. 1957)). "If the evidence raises any issue of material fact, if it is *1080 conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Id. (citing Williams v. Lake City, 62 So.2d 732 (Fla. 1953), and Crovella v. Cochrane, 102 So.2d 307 (Fla. 1st DCA 1958)). The summary final judgment under review in this case violates these basic principles. Accordingly, we reverse the summary final judgment, and we remand for further proceedings.
Reversed and remanded.
NORTHCUTT and SILBERMAN, JJ., Concur.