### RYAN v. CONTINENTAL CASUALTY CO.
### No. 5869.

Circuit Court of Appeals, Fifth Circuit.
March 10, 1931.

T. Paine Kelly and W. B. Lindsay, both of Tampa, Fla. (W. B. Lindsay, T. Paine Kelly, and J. W. B. Shaw, all of Tampa, Fla., on the brief), for appellant.

R. W. Shackleford and Morris E. White, both of Tampa, Fla. (Robert W. Shackleford and Shackleford, Ivy, Farrior & Shannon, all of Tampa, Fla., on the brief), for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellant on a policy issued by the appellee whereby the latter promised to pay to the former a stated sum for the loss of life of Charles J. Ryan, her husband, "resulting from a personal injury which is effected solely and independently of all other causes by the happening of an external, violent and purely accidental event." The evidence showed as follows: At the time of his death the insured was forty-four years of age. Prior to his assisting in loading ice in a railroad car on the morning of his death he appeared to be in good health. While an employee of the ice company of which insured was the manager was engaged in loading ice into the car the insured took part in that task. While pulling ice from a truck into the car he slid and sat down, and he fell a second time on his face. Then he got up, held one hand on his chest, and walked to a platform on which he laid down. After lying there for awhile he got up and went to his home in an automobile driven by his son. He died about thirty or forty minutes after reaching his home. A physician found him there in a state of shock, cold, clammy, and pale, and complaining of pain in his chest. The physician stated that he had his hand on deceased's pulse when it stopped; that his pulse was good right up to the time it stopped, but it stopped very suddenly, and he went right into a convulsion and died. He also stated that he was at a loss as to the cause of the death until he heard that the undertaker had found that there was a leak, and he then guessed it was a ruptured aorta; that he did not see any external evidence of an injury; and that he did not know that it is possible, from a medical standpoint, for the aorta of the human body to be ruptured by any fall, no matter how violent, unless there was some external evidence of that fall. One would have no feeling after the rupture of the aorta, as death at once would follow such a rupture. The undertaker who embalmed the deceased's body testified that in injecting the embalming fluid the face and upper part of the body responded, but that it appeared that there was no circulation in the lower part of the body, which led him to believe that there was an obstruction or rupture which interfered with the circulation. After the body had been embalmed there was an autopsy. The report of the physician who conducted the autopsy stated:

"No external signs of violence on body.

"Thoracic cavity; lungs looked apparently normal.

"Heart; phecardium had a number of small holes about the eighth of an inch in diameter, muscles of the heart proper had a like condition, that is a number of perforations throughout its substance, also the arch of the aorta had a hole in it.

"The perforations of the heart were most likely made by use of trocar in the process of embalming, but I cannot positively state whether the perforation of the arch was a spontaneous condition or was caused by the use of trocar."

Upon the conclusion of the evidence the court directed a verdict in favor of the defendant.

■ The appellant was not entitled to recover unless the death of the insured resulted from a personal bodily injury which was effected solely and independently of all other causes by the happening of an external, violent, and purely accidental event; and the burden was on her to prove that the death was so effected or caused. It seems that a conclusion that the physical condition of the insured following his taking part in the loading of ice in the car, and his death, were due solely to his accidental slipping and falling or sitting down, and were not proximately contributed to by his voluntary exertion in handling ice, would have been a mere guess or surmise, and not a finding based on evidence having a substantial tendency to prove that what accidentally happened was the sole cause of such condition and the death. Carswell v. Railway Mail Ass'n (C. C. A.) 8 F.(2d) 612, 614; Baldwin v. North American Accident Ins. Co. of Chicago (C. C. A.) 22 F.(2d) 111. To say the least, the conclusion that the insured's state of shock, and that he was cold, clammy, pale, and in pain after taking part in the loading of ice, were due in whole or in part to the exertion which he voluntarily made, was as consistent with the evidence adduced as the conclusion that what accidentally happened was the sole cause of his change of condition. But, assuming that insured's change of condition would not have been caused by his voluntary exertion if the accidental slipping had not occurred, and that the change of condition was not due

wholly or partly to the voluntary exertion, we are of opinion that the evidence adduced did not warrant a finding that his death was so caused as to give rise to a liability of the appellee under the policy sued on, because no phase of that evidence had any tendency to prove that what accidentally happened was capable of causing the death if the insured, prior to such accidental happening, was not affected with a disease or bodily infirmity which contributed to his change of condition and death. There was no evidence furnishing any support for a finding that the death of a person in anything like normal health could have been caused solely by such a slipping and sitting or falling down as the evidence tended to prove. Though the insured sustained a personal injury by the happening of an external violent and purely accidental event, his death was not brought about solely and independently of all other causes by that accident, if, at the time the accident occurred, it would not have caused his death if he had not then been afflicted with a previously existing disease or infirmity, and if the accident had not aggravated the effect of the disease or infirmity, or the disease or infirmity had not aggravated the effect of the accident. National Masonic Acc. Ass'n v. Shryock (C. C. A.) 73 F. 774; Kerns v. Aetna Life Ins. Co. (C. C. A.) 291 F. 289; Aetna Life Ins. Co. v. Ryan (C. C. A.) 255 F. 483; Commercial Travelers' Mut. Acc. Ass'n v. Fulton (C. C. A.) 79 F. 423. It cannot fairly be denied that the evidence as to the circumstances attending the physical collapse of the insured and his death persuasively indicated that before and at the time of the accidental event, which evidence tended to prove, the insured was afflicted with some serious internal ailment or defect, and that such pre-existing ailment or defect caused or proximately contributed to his death. We think the evidence adduced was such that the court would have been warranted in setting aside a verdict which involved a finding that the death of the insured resulted from a personal injury which was effected solely and independently of all other causes by the happening of an external, violent, and purely accidental event. This being so, the above mentioned ruling was not erroneous.

The judgment is affirmed.