**SADLER et al. v. GUARDIAN LIFE INS. CO. OF AMERICA.**

No. 380.

District Court, S. D. Florida.

Sept. 12, 1941.

Fisher & Sauls, of St. Petersburg, Fla., for plaintiff.

Shackleford, Farrior & Shannon, of Tampa, Fla., for defendant.

BARKER, District Judge.

The plaintiff, Lena Harwell Sadler, instituted action in the state court seeking to effect recovery of double indemnity benefits under the following provision of a life insurance policy issued to her then husband, Samuel J. Murphy:

"The Double Indemnity specified on the first page hereof shall be payable if with the proof of the death of the Insured the Company shall receive due proof that such death occurred while there was no default in payment of premium hereunder and this policy was in full force and effect, as a result directly and independently and exclusively of all other causes, of bodily injuries effected solely through external, violent and accidental means, of which (except in the case of drowning or of internal injuries revealed by an autopsy) there is as evidence a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days from the date of such bodily injuries; provided, however, that this Double Indemnity shall not be payable if the Insured's death resulted from self-destruction whether sane or insane; from any violation of law by the Insured; from any military or naval service; from Red Cross service or other relief work in connection with actual warfare; from a state of warfare, insurrection or riot or any act incident thereto; from police duty of any kind; from engaging or participating as a passenger or otherwise in aerial navigation or submarine operations or service connected with either; or directly or indirectly from bodily or mental infirmity, poisoning or infection (Unless such poisoning or infection occurred in connection with or in consequence of accidental bodily injuries), or illness or disease of any kind. The Company shall have the right and opportunity to examine the body or to make an autopsy unless prohibited by law".

Subsequent thereto the defendant duly effected removal to this court. The plaintiff, as beneficiary under the aforesaid policy, alleged in her complaint that the death of her husband, the insured, was brought about independently and exclusively of all other causes and solely through external and accidental means. The defendant in its answer denied that the insured came to his death as a result directly and independently and exclusively of all other causes, of bodily injuries effected solely through external, violent and accidental means, and interposed four additional defenses, one of which was not presented to the Court on this hearing and therefore need not be mentioned. The defenses urged by defendant on this hearing for

summary judgment, in addition to the above mentioned one, are as follows:

1. The failure of the plaintiff, beneficiary, to comply with the following condition contained in the double indemnity provision of the policy: "if with the proof of the death of the Insured the Company shall receive due proof that such death occurred while there was no default in payment of premium hereunder and this policy was in full force and effect, as a result directly and independently and exclusively of all other causes, of bodily injuries effected solely through external, violent and accidental means * * *", it being alleged in said defense that not only did plaintiff fail to furnish proof as required but that on the contrary proofs of death furnished by her did disclose that the cause of death of insured was disease or diseases.

2. A further defense presented by defendant's answer and argued on this motion is that the plaintiff did fail to allow to the defendant an opportunity to examine the body of the insured to make an autopsy as provided in the contract.

3. The third defense presented on this motion is that the plaintiff was guilty of laches in failing to assert her claim for a period well in excess of two years subsequent to the date of death of her husband and that her failure so to do was prejudicial to the rights of the defendant, as will more fully appear from the further discussion hereinafter contained.

The case has come before me on the defendant's motion for summary judgment, duly made, upon the complaint and answer and certain depositions and affidavit and the record shows that notice of this hearing was served upon attorney for the plaintiff more than ten days prior to the date of hearing, to which said notice was attached copies of the depositions upon which the defendant relied in support of its motion, to wit, the deposition of the plaintiff, Mrs. Lena Harwell Sadler, and the deposition of Daniel J. Reidy, assistant secretary of the defendant company.

The aforesaid depositions were duly read and considered by the court as were the depositions taken by the defendant of Doctors B. L. Shackleford, Edwin S. Byrd and A. J. Ayers, which said depositions were offered by the plaintiff in resistance to the motion and likewise the court has duly considered the affidavit of Henry U. Stone, also submitted by the plaintiff in opposition to the motion.

■ After full argument of counsel for the respective parties, I am of the opinion that this action is one which is proper for determination under Rule 56, 28 U.S.C.A. following section 723c, inasmuch as the complaint, answer, depositions and affidavit on which the case is submitted conclusively show that there is no genuine issue as to any material fact, and that should the case be permitted to go to trial on the issue stated, a verdict would necessarily be instructed for the defendant.

Assuming, without deciding, that death occasioned either as result of coming in contact with poison ivy or poison oak, or death resulting from the bite of a wood tick is within the coverage contemplated by the double indemnity provision of the policy, it is my conclusion that the medical evidence introduced by the plaintiff leaves the cause of the death of Samuel J. Murphy in the field of speculation and conjecture and that a finding that his death resulted directly and independently and exclusively of all other causes of bodily injuries, effected solely through external, violent and accidental means could only be reached by pyramiding inference upon inference.

The above stated finding and conclusion is predicated upon the various opinions expressed by the attending physicians, Shackleford and Byrd, as well as the opinion expressed by another attending physician, Dr. Sauls, as testified to by the plaintiff when viewed in the light of the autopsy report and findings made by Dr. A. J. Ayers.

■ However, my determination of this cause is not predicated solely upon the above conclusion. It appears established to the Court beyond any question that the plaintiff failed to permit the defendant the right and opportunity to examine the body of her deceased husband or to make an autopsy thereon, which right was provided in the policy and further, that the plaintiff failed to use due diligence to comply with the condition of the policy with reference to furnishing to the defendant proof that the death of the insured resulted through external, violent and accidental means. In addition, and primarily, the Court is convinced that the plaintiff has been guilty of gross laches in failing to advise the company of her intention to make a claim under the aforementioned policy provision. Plaintiff has introduced no proof of any character whatsoever which would excuse her admitted unreasonable delay in advancing her claim and the Court is satis-

fied that the delay of at least two years and five months in forwarding to the company any proof in support of her present claim has been occasioned by the negligence of the plaintiff, resulting from the lack of due diligence.

The Court is satisfied that plaintiff, beneficiary, was definitely advised by her husband's attending physicians during his lifetime as to their opinion of the diseases with which he was afflicted and that she was, immediately subsequent to his death, further fully advised as to opinions of said physicians as to the cause of his death, and that she acquired no additional information thereafter contradictory to said expressed opinions and that, therefore, it became her duty, in the exercise of reasonable diligence, to make inquiry as to her rights under the contract in question.

In support of my above stated conviction, I quote from Mrs. Sadler's deposition as follows:

"Q. So that you accepted as the one cause of your husband's death, accepted fact that your husband's death was occasioned either by poison ivy or by bite of an insect? A. Yes.

"Q. And that was your opinion based upon the conversations which you had? A. I tried mighty hard to find something else the matter with him but I could not. It was hard for me to believe that a man could be that sick from that. That is reason I had all those doctors called in. * * *

"Q. Both Doctors Shackleford and Byrd had continuously voiced to you their professional opinion that cause of his condition and cause of his death was either poisoned oak infection or infection resulting from a tick bite? A. Yes, They continuously stressed that. * * *

"Q. But you did not secure any additional information subsequent to the date on which you delivered policy to representative of the company as to the cause of your husband's death? A. No, because I already had that information. I knew what he was supposed to have died from".

The record establishes the following facts beyond controversy:

1. That Samuel J. Murphy, the insured, departed this life on April 11, 1938.

2. That an autopsy was performed on his body on the date of his death, at the request of the attending physicians; that the plaintiff consented to the autopsy. It is clear that the defendant company was not in anywise advised of the performance of the autopsy until at least several days subsequent thereto, at which time it had no knowledge of any facts which indicated that a claim would be made under its double indemnity provision.

3. That the defendant received no intimation as to the possibility of such claim until the receipt of letter from Henry U. Stone (assuming that this letter was received) which correspondence at most sought information and did not constitute proof.

4. That no proof of any nature was furnished by the plaintiff to the defendant in support of the present claim until October 14, 1940.

5. That subsequent to said date, no further steps were taken until March, 1941, when attorneys wrote the defendant with reference to the claim.

Granting that the plaintiff was ignorant of her legal rights until July, 1940 (if such existed, which question it is unnecessary for me to determine), such fact does not constitute a legal excuse.

Further, the record demonstrates that subsequent to the receipt of the supposed information, the plaintiff continued to negligently fail to advance her claim with the diligence required by the law.

The plaintiff has advanced no excuse or explanation for her long continued inaction, other than the statement that she did not believe the diagnosis which was made by the very physicians upon whose testimony she now relies to effect recovery. Her belated conversion to the soundness of said medical views is wholly without legal merit.

The Supreme Court of Florida in the case of Stonebraker v. Reliance Life Insurance Company, 123 Fla. 244, 166 So. 583, 584, has enunciated the legal principle, "that parties to a contract, in the absence of fraud, accident, or mistake, will be conclusively presumed to know and understand the contents, terms, and conditions of the contract".

The application of said principle under the evidence before the Court imputes to the plaintiff full knowledge of the provisions of the policy which she admittedly had in her possession and which she surrendered to the defendant for the purpose of cancellation upon payment of the face benefit thereof. The uncontroverted

evidence establishes that she slept on her rights and there is no doubt in the Court's mind but that the defendant has been prejudiced by her delay and neglect in that it has lost thé opportunity of making an examination of the body of the insured or of participating in the autopsy, a particularly valuable right in view of the uncertainty which clouds the question as to the cause of the insured's death; likewise the defendant company has been precluded from making an investigation of the facts surrounding the insured's activities immediately prior to the onset of the disease. The position of the defendant is so changed to its detriment that it would be inequitable to permit the prosecution of the action at this late date.

It is the conclusion of the Court that the defendant is entitled to judgment, as a matter of law.

The Court therefore directs that judgment be entered in favor of the defendant and counsel for the defendant is directed to tender the proper judgment order.