88 So.2d 915 (1956)
ELSA BERG, APPELLANT,
v.
NEW YORK LIFE INSURANCE COMPANY, A NEW YORK CORPORATION, APPELLEE.
Supreme Court of Florida, Division A.
May 23, 1956.
Rehearing Denied July 19, 1956.
Roland W. Granat, Miami Beach, for appellant.
Leo S. Julian and Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for appellees.
TERRELL, Justice.
New York Life Insurance Company sold two policies of insurance with double indemnity *916 on the life of Abram Berg. The first policy was in the sum of $10,000, dated January 20, 1923. The second policy was in the sum of $30,000, dated April 17, 1928. Mr. Berg paid premiums on these policies until 1947, when he became totally and permanently disabled; premiums were then waived and he accepted the disability benefits provided by the policies. April 29, 1949, Abram Berg married the plaintiff-appellant and moved to Miami Beach, "Fannie" his first wife having passed away. July 1, 1951, Mr. and Mrs. Berg attended a card party in Miami Beach and when they returned home about midnight, they were confronted by two masked robbers who had broken into their home. The robbers held guns on the Bergs and warned them to be quiet. One of them grabbed Mr. Berg from the rear, placed his hand over his mouth, roughed him up and pulled him into a chair. The robbers then demanded money and jewelry from the Bergs, pulled a ring from the hand of Mr. Berg and compelled Mrs. Berg to give them her jewelry, after which they forced her into a closet and closed the door. Considerable money was secured by them and they left the premises; the police were called; an investigation ensued but it disclosed neither hair nor hide of the robbers. Mr. Berg continued in shock that night and the next day, and went to bed early the following night. His behavior was confused and erratic and a doctor was called at 3:30 or 4:00 A.M. He was treated and carried to the hospital where he died at 8:00 A.M. the following morning, without having regained consciousness.
Demand for payment as provided by the double indemnity clause of the policies was refused. This action for recovery was instituted; a master was appointed; testimony was taken and the master found that the provisions of the double indemnity clause in the policies were not available to the plaintiff. Exceptions to the master's report were overruled and final decree was entered for defendant. The complaint was dismissed at the cost of the plaintiff. This appeal is from the final decree.
The point for determination is whether or not under the circumstances related, the double indemnity provisions of the policies were available to the plaintiff. Stated otherwise, did Mr. Berg's death result directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause or was it caused directly or indirectly from infirmity of mind or body, from illness or disease?
The answer to this question is governed by the double indemnity provisions of the policies. The double indemnity provision of the first policy was as follows:
"New York Life Insurance Company agrees to pay to Fannie, wife of the insured, * * * beneficiary, * * *
 Ten Thousand Dollars 
upon receipt of due proof of the death of Abram Berg, the Insured; or * * * upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, * * *.
"This Double Indemnity Benefit will not apply if * * *; Insured's death resulted from physical or mental infirmity; or directly or indirectly from illness or disease of any kind * * *." (Emphasis supplied.)
The double indemnity provision of the second policy was as follows:
"The Double Indemnity provided on the first page herewith shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * *.
"Double indemnity shall not be payable if the Insured's death resulted * * *; directly or indirectly, from infirmity of mind or body, from illness or disease, * * *." (Emphasis supplied.)
*917 The gist of these provisions is that death must have "resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause," but that if death results "directly or indirectly from infirmity of mind or body, from illness or disease," double indemnity is not available to the insured, neither is it available if these causes combine to produce death.
For double indemnity to be available to the beneficiary, the evidence must show that death resulted directly from the robbery or its incidence; that it will not be available if death results from physical or mental infirmity or directly or indirectly from illness or disease of any kind.
In sum the doctors testified that insured's blood vessels were diseased; that he had cerebral arteriosclerosis and that, said one of the doctors, "in terms of probability, I would say he most probably would not have died had he not had diseased vessels." Arteriosclerosis is a degenerative process which makes the blood vessels harden, thicken and more brittle. The evidence also shows that deceased had diabetes which contributes to the hardening of the blood vessels, that the robbery must have precipitated death, but that the primary cause was disease and illness of long standing, except for which the robbery would have had no ill effect.
Despite the fact that deceased was examined by his doctor two days before his death and pronounced able to take a trip north, two eminent internists testified that the robbery was a secondary cause of death and that the primary cause or causes were the infirmities or diseases he had prior to the robbery. He was shown to have had two prior strokes besides recent cerebral vascular damage, general and vascular arteriosclerosis in addition to other illnesses. The death certificate shows that the cause of insured's death was "cerebral hemorrhage due to cerebral arteriosclerosis." The pathologist who testified at the trial and who performed the autopsy described the cause of death as "cerebral vascular thrombosis." Dr. Nathan, appellant's physician, testified that her husband "most probably would not have died had he not had diseased blood vessels."
Double indemnity policies imposing liability when death results from bodily injury effected solely by external, violent and accidental means generally contain an exemption from such liability in death results directly or indirectly from disease or bodily infirmity. When such provisions are construed together or if the accidental injury and the preexisting disease or infirmity cooperate in causing the death of insured, doubled indemnity can not be recovered even though the injury is an active, efficient and procuring cause, provided the disease or infirmity contributes either directly or indirectly to causing insured's death. The Maccabees v. Terry, Fla., 67 So.2d 193; Couch on Insurance, Vol. 5, page 4011.
Appellant also contends that she was entitled to have the issue in this case submitted to a jury. It is settled that the submission of a factual question in an equity case to a jury is one in the discretion of the chancellor. We find no abuse of discretion in refusing to do so in this case. Smith v. Croom, 7 Fla. 180.
The decided weight of the evidence shows that Mr. Berg's death resulted primarily from infirmity and disease rather than directly or independently of other causes from bodily injury effected solely through external, violent and accidental means, so the decree appealed from must be and is hereby 
Affirmed.
DREW, C.J., and HOBSON and THORNAL, JJ., concur.