**Bertha B. GORDON, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, Defendant.**

**No. 67–173 Civ. T.**

United States District Court
M. D. Florida,
Tampa Division.
Oct. 17, 1967.

Frank McClung, Brooksville, Fla., Patillo, MacKay & McKeever, Ocala, Fla., for plaintiff.

Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for defendant.

KRENTZMAN, District Judge.

## OPINION AND FINAL SUMMARY JUDGMENT FOR DEFENDANT

This is an action brought by BERTHA B. GORDON as the beneficiary under a Travel Accident Policy of American Motorists Insurance Company on the life of Clifton O. Gordon, her husband. Mrs. Gordon averred and American Motorists Insurance Company denied that the decedent had died an accidental death within the terms of the policy.

This case came on to be heard on cross-motions for summary judgment predicated upon the pleadings, depositions of the decedent's treating physician, Dr. J. O. Escamilla, and a pathologist who performed an autopsy on the deceased on the day of his death, Dr. Dayton L. Moseley, Jr., and upon requests for admissions propounded by the defendant, to which the plaintiff did not respond and therefore admitted (Rule 36, Federal Rules of Civil Procedure), and interrogatories propounded by the defendant and the plaintiff's answers thereto.

The insuring clause of the policy in question insured Clifton O. Gordon against "(L)oss resulting directly and independently of all other causes from injury as defined herein, subject to the provisions, conditions, limitations and exclusions * * * of this Policy." The policy further defined "injury" as "(B)odily injury caused solely by an accident occurring while this Policy is in force * * *." The policy goes on, in "Part II Exclusions", to state: "This Policy does not cover any loss fatal, or non-fatal, caused by or resulting from: * * * Disease * * *."

Taking the view of the evidence most favorable to the plaintiff, and resolving any conflicts in the evidence in favor of the plaintiff, it appears that the decedent, then 66 years of age, was involved in an automobile accident on June 10, 1966, in Hernando County, Florida, and died on June 12, 1966. At the time of the accident he experienced a blow and pain but was not hospitalized, and no x-rays were taken until after his death. It was then determined that he had suffered three broken ribs in the accident. He died at home two days after the accident; he was sitting on the couch, reading, and suddenly started making snoring noises and expired. He had previously been hospitalized in Homestead, Florida, from July 8, 1956, to August 2, 1956, as the result of a heart attack; was also hospitalized in Brooksville, Florida, from October 5th to October 15th, 1965; and saw a doctor once a month after his heart attack.

Dr. Escamilla treated the decedent from 1960 until his death, and testified that he saw the decedent "(B)ecause of hardening of the arteries. He was a severe diabetic," and that he had arteriosclerotic heart disease. The doctor saw Mr. Gordon after the accident and at that time "(H)e was doing all right. I told him not to worry about it."

Dr. Escamilla executed a death certificate and gave as the cause of death myocardial infarction due to arteriosclerotic heart disease and diabetes mellitus. The death certificate indicated as other significant conditions contributing to death but not related to the terminal disease condition: "Three right ribs

broken." In his deposition, Dr. Escamilla stated that he believed the cause of death was a myocardial infarction because of the way that Mr. Gordon "just dropped dead". A myocardial infarction is a failure of the heart for lack of adequate blood supply, due to arteriosclerotic heart disease. Dr. Escamilla believed diabetes also contributed to the death. Dr. Escamilla stated that the death was not caused solely by the accident and the broken ribs but was caused in part by the arteriosclerotic heart disease and coronary insufficiency, causing myocardial infarction. The immediate cause of death was infarction. A person in Mr. Gordon's condition could have a myocardial infarction at any time. This doctor believed that the accident precipitated the myocardial infarction. However, he agreed that the accident did not precipitate or activate the arteriosclerotic heart disease. This was a pre-existing condition that had existed for several years and was active at all times and was a continuous degenerative process.

In the proof of loss and claim for accidental death filed by the plaintiff with the defendant, a copy of the death certificate was attached, as was a statement of Dr. Escamilla. In this statement Dr. Escamilla said, "Death was caused by myocardial infarct." Further in his statement he failed to answer the question: "Did the injury, independent of all other causes, produce the death of deceased?" And to the question: "If there were contributing causes, give details.", stated: "6–10–66. Fractures of third, fourth and fifth ribs."

The pathologist, Dr. Moseley, testified that his external physical examination of the deceased showed small superficial scratches and abrasions; a chronic leg ulcer and an old surgical incision, and no other findings. He found the heart to be enlarged, the right coronary artery completely obliterated by an old thrombus, the muscle of the heart showing evidence of an old episode of death of heart muscle, and the subsequent formation of an aneurysm, the left coronary artery showing an extreme degree of involvement of the field by hardening of the arteries or atherosclerosis. He found that the inner lining of the chest cavity over the fractured ribs was intact and had not been perforated, and found the deceased to have coronary atherosclerosis, severe, and extreme reduction of the lumen of the left anterior descending coronary artery by atherosclerosis and hemmorhage into the atherosclerotic plaque, left ventricular hypertrophy and atherosclerosis of aorta, severe. As a result of his examination and clinical history and autopsy, he determined that the cause of death was coronary insufficiency related to the heart disease.

He stated that the fractured ribs were not a factor in the death because he knew of no mechanism by which the fractured ribs in themselves could reduce the function of the coronary arteries in the absence of some positive mechanical connection, and there was no evidence that the ribs had any mechanical play in the function of the heart. In his opinion the death was not caused solely by the accident but was caused by or resulted from heart disease.

■ The medical testimony is devoid of any ambivalence or conflict as to the conclusion that arteriosclerotic heart disease and myocardial infarction were causes of and the decedent's death resulted from such illnesses. The law is clear that in an action upon an accident policy of the sort here in issue, the plaintiff must establish that the death was caused by accident, resulting directly and independently of all other causes, from injury, and was not caused by and did not result from disease. New York Life Insurance Co. v. Hatcher, 5th Cir. 1940, 115 F.2d 52; White v. New York Life Insurance Co., 5th Cir. 1944, 145 F.2d 504; Metropolitan Life Insurance Co. v. Jenkins, 1943, 152 Fla. 486, 12 So.2d 374, 376, 377.

■ Moreover, the cases in this jurisdiction, under policy language and facts materially similar to those here in issue, have consistently held that there can be no recovery where the insured's pre-existing physical condition caused or co-

operated with an accident to produce death. See e. g., Berg v. New York Life Insurance Co., Fla.1956, 88 So.2d 915; The Maccabees v. Terry, Fla.1953, 67 So. 2d 193; Ryan v. Continental Casualty Co., 5th Cir. 1931, 47 F.2d 472; Davis v. Jefferson Life Insurance Co., 5th Cir. 1934, 73 F.2d 330, 96 A.L.R. 599; White v. New York Life Insurance Co., supra; Mutual Life Insurance Co. of New York v. Hess, 5th Cir. 1947, 161 F.2d 1.

In Decker v. New York Life Insurance Co., 5th Cir. 1964, 328 F.2d 650, a judgment for the insurer, notwithstanding a verdict for the beneficiary in a suit on a double indemnity provision of the policy, was affirmed on appeal. The insured had a heart condition, for which his physician prescribed drugs, including an anti-coagulant. The insured was injured in an automobile accident; bleeding resulted, and to aid in stopping the bleeding the administration of the anti-coagulant was discontinued and a blood coagulant was prescribed. Thereafter the insured suffered a heart attack. The cause of death was acute myocardial infarction due to hypertensive arteriosclerotic heart disease. The beneficiary urged that death resulted from the injuries received in the automobile accident and the treatment that was given for those injuries. Nevertheless, the Fifth Circuit held that judgment for the insurer was required.

Even more recently, in Prudential Insurance Co. of America v. Schreffler, 5th Cir. 1967, 376 F.2d 397, an insured who had suffered from pulmonary emphysema and other lung diseases broke his hip when he tripped and fell at home. He successfully underwent surgery to set the fracture, but following the operation his lung condition worsened and he subsequently died. The insuring clause of the policy there provided that it covered an accidental bodily injury "(W)hich results, directly and independently of all other causes, in the loss of life * * *." The policy further included an exception to the effect that "(N)o loss shall be considered a loss due to accidental bodily injury if such loss is caused or contributed to by (1) bodily or mental infirmity or disease * * *." The Fifth Circuit held that the trial court should not have let the case go to the jury because the evidence admitted of no other interpretation than that death was brought about in part or was contributed to by insured's chronic diseases and stated further that (376 F.2d at 402):

"We therefore conclude that the jury had no basis in the evidence to conclude that the insured's death resulted from an accident 'directly and independently of all other causes' within the policy's meaning."

In both that case and the instant case, the plaintiff contended vigorously that the accident had caused the death in that the decedent would not have died at that time but for the accident. The Fifth Circuit emphatically rejected this theory, stating (376 F.2d at 401):

"* * * It is quite clear to us that this notion of causation is but a relatively primitive version of what is known as 'but-for' causation. * * * On the other hand, the double indemnity clause of the policy expresses a far broader concept."

See also The Maccabees and Berg, supra. The Fifth Circuit went on to say (376 F.2d at 401):

"The Florida Supreme Court has construed substantially similar language in the policy thus:

'Double indemnity policies imposing liability when death results from bodily injury effected solely by external, violent and accidental means generally contain an exemption from such liability if death results directly or indirectly from disease or bodily infirmity. When such provisions are construed together or if the accidental injury and the pre-existing disease or infirmity co-operate in causing the death of insured, double indemnity cannot be recovered even though the injury is an active, efficient and procuring cause, provided the disease or infirmity contributes either directly

or indirectly to causing insured's death.'

"Berg v. New York Life Insurance Company, Fla.Sup.Ct.1956, 88 So.2d 915, 917. The Maccabees v. Terry, Fla. Sup.Ct.1953, 67 So.2d 193. In Decker v. New York Life Insurance Co., 5 Cir. 1964, 328 F.2d 650, 652, a case quite similar to the present one, we said in interpreting Florida law:

' * * * (I)t does not follow that death resulted directly and independently of all other causes from the accidental injury merely because the treatment of the injury impaired the treatment of the heart condition with the result that the heart condition took a fatal turn. The decedent died of a preexisting heart condition and hence it was a cause of death. This, we think, is so even though the injury and the treatment of it were active and contributing causes. With the preexisting heart condition, whether called a disease or infirmity, contributing to the insured's death, there can be no recovery on the double indemnity provisions of the policy.'

"Dr. White did not testify that the accident and operation, as isolated contemporary occurrences, brought about the insured's death. Indeed, construed in the light of the standard expressed in these cases, Dr. White's testimony admits of no other interpretation than that the insured's death was brought about in part, or contributed to, by the chronic disease. The most tolerant semanticist could not brook any other construction of the expression that 'the method or mode of dying' was the illness. This is also the clear meaning of Dr. White's other explicatory statement that 'the reason he died after the operation was, in my best judgment, the aggravation of his pulmonary emphysema.'

"We therefore conclude that the jury had no basis in the evidence to conclude that the insured's death re-

sulted from an accident 'directly and independently of all other causes' with the policy's meaning. * * * "

■ The plaintiff's entire reliance is placed upon Great American Insurance Company v. Cornwell, Fla.App. 1st Dist. 1966, 191 So.2d 435, for the proposition that this case should be submitted to a jury for determination. That case is clearly distinguishable as the policy there contained no exclusion clause such as found in the instant case. Plaintiff's argument reads the exclusion clause completely out of the instant policy. However, this Court is not willing to concede that the exclusion clause has no purpose in the policy and, indeed, cannot reconcile the Cornwell case with the above cited cases from the Florida Supreme Court and the Fifth Circuit except on the basis of the importance to the decisions of exclusion clauses containing language materially similar to that here involved. There is no doubt whatsoever that the immediate cause of death in the instant case was disease in the form of a myocardial infarction. There is likewise no doubt that the myocardial infarction in turn resulted from severe advanced arteriosclerotic heart disease and insufficiency of blood supply to the heart. It may be that the accident in some way contributed to the death, but it is certainly clear that the accident did not alone, directly and independently of all other causes, cause the death, and it is equally clear that the accident did not cause the arteriosclerotic heart disease, which was an active, progressive disease from which the death resulted.

■ There is no genuine issue as to any material fact and it being clear that the defendant is entitled to judgment as a matter of law this is an appropriate case for the entry of summary judgment. See Aetna Life Insurance Co. of Hartford, Connecticut v. Stokes, 5th Cir. 1958, 252 F.2d 383; Sadler v. Guardian Life Insurance Co. of America, S.D.Fla.1941, 40 F.Supp. 772. The Court finds that plaintiff's Motion is without merit. For the

reasons given and the Court being advised in the premises, it is,

Ordered and adjudged:

1. That the plaintiff's Motion for Summary Judgment be and the same is hereby denied.

2. The defendant's Motion for Summary Judgment be and the same is hereby granted.

3. Final Summary Judgment be and the same is hereby entered in favor of the defendant, American Motorists Insurance Company, an Illinois corporation, and against the plaintiff, Bertha B. Gordon, and this action be and the same is hereby dismissed with prejudice to the plaintiff, and the plaintiff shall take nothing by her suit, and the defendant shall go hence without day and recover its costs and disbursements herein, to be hereafter taxed.